## Ex parte PRINDLE.

### Court of Appeal, Second District; July 29, 1905.

#### 94 Pac. 871.

Game—Protection by Local Authorities.—Constitution, article 11, section 11, authorizing any county, city, or town to make and enforce within its limits such local police regulations as are not in conflict with general laws, delegated to the county supervisors, prior to the passage of constitution, amendment, article 4, section 25½, authorizing the legislature to divide the state into game districts, the power to legislate for the complete protection of wild game within the bounds of their respective counties.

Game—Construction of Constitution.—Constitution, amendment, article 4, section 25½, authorizing the legislature to provide for the division of the state into fish and game districts and enact appropriate laws for the protection of fish and game therein, is to be construed with other sections of the constitution relative to the uniform application of the laws and the delegation of police power, and in such construction the more specific provision controls the general, without regard to the comparative dates; the different sections operating together, and neither working the repeal of the other.

Game.—Constitution, Amendment, Article 4, section 25½, authorizing the legislature to provide for the division of the state into fish and game districts and to enact appropriate laws for the protection of fish and game therein, prevails over earlier conflicting provisions of the constitution; and, while laws previously in force continue in force until substituted by new legislation, legislation subsequently adopted must be in harmony with the amendment.

Game—Mandatory Provisions of Constitution—"May."—Constitution, article 4, section 25½, providing that the legislature "may" provide for the division of the state into fish and game districts and "may" enact appropriate legislation for the protection of fish and game therein, is mandatory, and commands the legislature to enact necessary legislation touching the care and custody of game with

reference to local conditions, which require special legislation for particular localities.

**Game—Powers of Supervisors.**—Under constitution, amendment, article 4, section 25½, requiring the legislature to provide for the division of the state into fish and game districts and to enact appropriate legislation for the protection of fish and game therein, any previous authority existing in the legislature to delegate legislative power in reference to fish and game to counties is revoked, and, notwithstanding the failure of the legislature to obey the mandate of the constitution, a board of county supervisors is without authority to regulate, by ordinance passed after the adoption of such amendment, the hunting of game within the limits of the county.

**Game—Unreasonable Legislation.**—In View of the Provision of Penal Code, section 626a, making it a misdemeanor to hunt, kill or destroy doves between February 15th and July 1st of the same year, a county ordinance declaring it unlawful to hunt or destroy doves within the limits of the county between the thirtieth day of June and the fifteenth day of August of each year, and between the fifteenth day of August and the sixteenth day of February of the year next ensuing, and thus leaving but one day in the year open to hunt doves, is unreasonable.

Application by Lyman D. Prindle for a writ of habeas corpus. Prisoner discharged.

Lee, Scott, Bailey & Chase, Miller & Page and Robt. E. Ross for petitioner; J. D. Fredericks, district attorney, and Hartley Shaw, chief deputy district attorney, for respondent; Henry T. Gage and W. I. Foley, amici curiae.

ALLEN, J.—The defendant was arrested for the violation of ordinance No. 120 (new series), enacted on the sixteenth day of May, 1905, by the board of supervisors of Los Angeles county. Section 1 of the ordinance provides: "It shall be unlawful in the county of Los Angeles, between the thirtieth day of June and the fifteenth day of August of each year, and between the fifteenth day of August of each year and the sixteenth day of February of the year next ensuing, for any person to hunt, pursue, take, kill or destroy, or have in his possession, any dove or doves." Upon trial the defendant pleaded guilty, and was committed to the county jail upon default of payment of the fine imposed. This writ was issued upon his application, and the respondent, upon the return, justifies the imprisonment under such conviction.

The question presented is as to the validity of said ordinance. Section 626a of the Penal code makes it a misde-

meanor "to hunt, kill, pursue, or destroy, or have in possession, any dove or doves, between the fifteenth day of February and the first day of July of the same year." It will be observed that, taking the ordinance and the section of the Penal Code last referred to together, there remains but one day in each year open for the hunting, pursuing or killing of doves, or for having the same in possession, within Los Angeles county. The authority of the board of supervisors to enact this ordinance is claimed under section 11, article 11, of the state constitution, which reads: "Any county, city, town, or township may make and enforce within its limits, all such local, police, sanitary and other regulations as are not in conflict with general laws." The county government act of 1897 provides that boards of supervisors shall have power to provide by ordinance, not in conflict with the general laws of the state, for the protection of fish and game, and may shorten the season for the taking and killing of fish or game within the dates fixed by the state laws, but shall not lengthen the same.

The respondent's contention is that the regulation as to the killing and protection of wild game is referable to the police power, is local in its character, and is by the constitution delegated to the boards of supervisors. The right of the state legislature to enact laws for the protection of wild game, which belongs to the people of the state in their collective capacity, is held by our supreme court, in Ex parte Maier, 103 Cal. 482, 42 Am. St. Rep. 129, 37 Pac. 402, to be founded upon the general power to legislate, where not restrained by express or implied provisions of the constitution, and for the reason that the protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds, one of which is for the purpose of food. In the case last mentioned, the legislative authority prohibiting one to have in his possession wild game, wherever killed, is said to be referable to the police power. The phrase "police power," as employed in the constitution, is admitted to be found many precedents wherein it is declared that certain legislation is referable to such power, notably in the case of Thorpe v. Rutland & Burlington R. R. Co., 27 Vt. 149, 62 Am. Dec. 625, cited and approved in Ex parte Maier, 103 Cal. 485, 42 Am. St. Rep. 129, 37 Pac. 405, where, in referring to

the phrase "police power," it is said: "It extends to the protection of the lives, limbs, comfort, and quiet of all persons, and the protection of all property within the state according to the maxim 'Sic utere tuo ut alienum non laedas,' which being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which everyone may so use his own as not to injure others." It being established that it applies to the use of private property under certain exigencies, no reason is apparent why it should not be extended so as to include the interest and property which each citizen may own and possess in the collective property of the people of the state; and where, as in California, the diversity of climatic conditions—the immensity of its territory—would indicate the impropriety of exercising this police power through a general law applicable to the entire state, the necessity for local legislation, in order that complete and effective control or protection may be afforded, becomes apparent.

Were anything else required to establish the necessity for such local legislation, the amendment to the constitution, designated as section 25½, article 4, adopted in 1902, certainly indicates that the people of this state in the adoption of such amendment recognized the local character of legislation necessarily appropriate for the preservation of fish and game. We are of opinion, therefore, that the delegation of police power in section 11, article 11, should be held to include the local legislation necessary, in the opinion of the supervisors, to completely protect the wild game within the bounds of the various counties of the state. What we have here said applies to conditions existing prior to the year 1902, when the amendment to the constitution, designated as section 25½, article 4, was adopted. This amendment provides as follows: "The legislature may provide for the division of the state into fish and game districts, and may enact such laws for the protection of fish and game therein as they may deem appro-. priate." This section and the other sections of the constitution relating to the uniform application of the laws and the delegation of police power must be read and construed together; and in such construction the more specific provisions control the general, without regard to their comparative dates—the two acts operating together, and neither working

the repeal of the other. Cooley's Constitutional Limitations, and other authorities cited in Martin v. Election Commissioners, 126 Cal. 411, 58 Pac. 932, in which latter case it is said that, although a new section may conflict with other sections of the same article, it would still be valid as to the particular cases for which it is intended, for in such case the particular and general both stand together, and neither abrogates the other; the former furnishing the rule for the particular case, the latter for all other cases. This section 25½ is manifestly a scheme for the regulation and control of a specific subject; and, according to the well-established rules of construction obtaining in relation to statutes, the latter will prevail, and the earlier be held to have been superseded: Mack v. Jastro, 126 Cal. 132, 58 Pac. 372. And in Murdock v. Mayor, 20 Wall. 590, 22 L. Ed. 429, cited in Mack v. Jastro, supra, where a like question was presented in relation to statutes, it is said: "We are of opinion that it was their intention to make a new law so far as the present law differed from the former, and that the new law embraced all that was to be preserved of the old."

While it is true that an immediate repeal of one of the provisions of the constitution may not be effected under the rule thus laid down as to statutes, yet the effect is to supersede previous constitutional provisions when conflicting amendments have been adopted whenever appropriate legislation is enacted carrying the amendments into effect. "There is no express repeal of the former provisions of the constitution. They merely cease to exist by reason of new provisions upon the same subject being substituted for them. . . . . The old provisions will cease to have effect from time to time, as the substituted provisions commence to operate:" In the Matter of Oliverez, 21 Cal. 418. Under these authorities, then, the laws in force when section 25½ was adopted continue in force until substituted by new legislation under the later amendments; but legislation after the adoption of such amendment must of necessity be in harmony with the constitution existing at the time of its enactment. So that even the legislature is restricted in its power to legislate upon this subject of game in any manner conflicting with section 25½.

The provisions of this section are mandatory. While the word "may" is employed, the subject of the amendment is

in relation to the power given to public officers; and in Supervisors v. United States, 4 Wall. 436, 18 L. Ed. 419, it is said: "The conclusion to be adduced from the authorities is that, where power is given to public officers, . . . . the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person, the law requires shall be done. The power is given, not for their benefit, but for his. It is given as a remedy to those entitled to invoke its aid"—cited in Hayes v. Los Angeles County, 99 Cal. 80, 33 Pac. 766. The word "may" in section 25½ must therefore be read "must"; and ever since its adoption the express command has been upon the state legislature to enact such legislation touching the care and custody of wild game as is necessary for its effectual and full protection, and this with reference to local conditions, if any such there be, which would require special legislation for particular localities.

We are unable to see, however, any significance attaching to the manner in which the word "may" shall be read in this constitutional amendment, inasmuch as its obvious intent was to confer upon the state legislature alone authority to deal with the subject of fish and game, and in such legislation to relieve it from the necessity of enacting general laws applicable alike to the whole state, and the effect of which could only be to remove the necessity theretofore existing for delegation of power to local authorities. We are of opinion, therefore, that any authority reposing in the legislature to delegate legislative power to counties in reference to this subject was revoked by the amendment 25½; and the failure and neglect of the legislature to obey the plain mandate of the constitution does not empower the board of supervisors to assume this duty reposing in the state alone. This ordinance, therefore, having been adopted since the adoption of section 25½, and since authority to delegate power with reference to this subject has ceased to exist, it must be held to be invalid. Were it even a valid exercise of power, the ordinance upon its face is an unreasonable exercise thereof. The delegated power originally was with reference to shortening the season, which can only be held to be a period of time within which persons might exercise a natural right to hunt and kill the game belonging to the public, and not to enact an ordinance in its nature prohibitive.

The ordinance, therefore, being void, it follows that the prisoner should be discharged; and it is so ordered.

I concur: Gray, P. J.

SMITH, J.—I concur in the decision on the ground last stated.