[Crim. No. 364.    Third Appellate District.—August 9, 1916.]

# In the Matter of the Application of CHARLES CENCININO for a Writ of Habeas Corpus.

Fish and Game—Power of Legislature—Constitutional Law.—By the adoption in the year 1902 of section 25½ of article IV of the constitution, providing that the legislature may provide for the division of the state into fish and game districts and may enact such laws for the protection of fish and game therein as it may deem appropriate to the respective districts, the people expressly vested in the legislature of the state the sole and exclusive power over and control of legislation relating to the fish and game of the state, and withdrew from the local subdivisions of the state whatever power they might have previously exercised over such subject under section 11 of article XI of the constitution, which grants to counties, cities, towns, and townships of the state the right to make and enforce within their respective limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.

Id.—Constitutional Provision Mandatory.—The provisions of section 25½ of article IV of the constitution are mandatory, notwithstanding the use therein of the word "may."

Id.—Statutory Construction—Permissive Language.—Where the purpose of the law is to clothe public officers with power to be exercised for the benefit of the public, language which is permissive in form is to be construed as peremptory.

Id.—Withdrawal of Police Power.—The people may at any time legally withdraw from local authorities the power of police or any portion thereof which they have by their constitution granted to such authorities.

APPLICATION for a Writ of Habeas Corpus originally made to the District Court of Appeal for the Third Appellate District.

The facts are stated in the opinion of the court.

J. J. Carin, and Leon E. Prescott, for Petitioner.

HART, J.—The petition alleges that the petitioner is illegally held in restraint of his personal liberty by the sheriff of Humboldt County, and the return of that officer shows that he detains and is detaining the petitioner in custody under the authority of a warrant of arrest issued out of the

justice's court of Trinidad township, said county, upon a complaint charging the petitioner with the violation of the provisions of Ordinance No. 118, passed by the board of supervisors of Humboldt County on the sixteenth day of November, 1912, and which, by virtue of a provision therein contained, went into effect on the third day of December, 1912.

Said ordinance reads in part as follows:

"Section I. It shall be unlawful at any time to offer for shipment, ship, transport or receive for shipment or transportation from the County of Humboldt, State of California, to any place outside of said County of Humboldt, State of California, any crabs caught in or taken from any of the waters within the limits of the said County of Humboldt, State of California.

"Section II. It shall be unlawful at any time to offer for shipment, ship, transport or receive for shipment or transportation from the County of Humboldt, State of California, to any place outside of said County of Humboldt, State of California, any clams of any kind or character produced or taken from any ground, waters, or territory within the limits of said County of Humboldt, State of California.

"Section III. Every person who shall violate any of the provisions of this ordinance shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding five hundred dollars or by imprisonment in the County Jail not exceeding six months or by both such fine and imprisonment."

The ordinance declares that the true intent and purpose thereof is "solely to secure the better protection of the crabs and clams in the public waters and grounds within the County of Humboldt, State of California, and not for the regulation of the business of dealing in crabs and clams."

The petitioner, in support of his claim that his restraint is illegal, makes this point: That, by the adoption, in the year 1902, of section 25½ of article IV of the constitution (see Stats. 1901, p. 948), the people expressly vested in the legislature of the state the sole and exclusive power over and control of legislation relating to the fish and game of the state. Manifestly, the effect of that construction of said provision is to exclude the legislative bodies of local political subdivisions of the state from any power or right to legislate with respect to those subjects. If this be a sound position, it fol-

lows, of course, that the ordinance whose provisions the petitioner has been charged with violating relates to a subject not within the legislative competence of the board of supervisors of Humboldt County, is therefore void, and, as a necessary consequence, under or upon the purported ordinance no complaint stating a public offense can be formulated.

The section of the constitution in question reads as follows: "The legislature may provide for the division of the state into fish and game districts, and may enact such laws for the protection of fish and game therein as it may deem appropriate to the respective districts."

The legislature of 1911 (Stats. 1911, p. 425), in pursuance of the authority vested in it by that provision of the constitution, passed an act whereby it divided the state into six fish and game districts. By said act the first district was made to embrace, among several other counties, the county of Humboldt. At its session in the year 1915, however (Stats. 1915, p. 589), the legislature repealed said act and passed in lieu thereof another act, by the provisions of which the state was divided into twenty-nine fish and game districts. By this law that part of Humboldt County constituting Humboldt Bay was placed in districts Nos. 8 and 9. At the same session the legislature enacted section 628f of the Penal Code (Stats. 1915, p. 112), which, among other provisions, contains an inhibition, on pain of punishment as for a misdemeanor, the shipment or offer for shipment or receipt for shipment or transportation any species of crab taken in fish and game districts 8 and 9.

The ordinance under which the petitioner has been proceeded against includes, in its inhibitions and penalty, all of Humboldt County, covering, therefore, those portions of Humboldt Bay which form parts of fish and game districts 8 and 9.

The authority vested in the legislature by section 25½ of article IV of the constitution to divide the state into districts for the purposes of legislation affecting fish and game was undoubtedly inspired by the fact, based upon experience in that direction, that, owing to the varied conditions with respect to fish and game existing in different parts of the state, no uniform legislation justly applicable and appropriate to the whole state and the diversified conditions therein existing as to game and fish was practicable or feasible. Regulations necessary and appropriate in one part of the state might be

wholly unnecessary and, indeed, unjust, and, therefore, inappropriate in other parts thereof. This is the only rational explanation of the scheme with respect to the matter of taking fish out of the waters of the state and hunting for game contemplated by the above provision of the constitution. And experience has demonstrated the necessity and efficacy of that scheme. Prior to the adoption of that amendment, it was within the competence of the boards of supervisors of the several counties to regulate the matter of taking and hunting fish and game within their respective territorial jurisdictions. These local regulations were often harsh and unjust, and sometimes inadequate to the proper protection of fish and game, the object of all such legislation merely being to provide against their ultimate extinction, which would inevitably result from an absence of proper legal restraint upon their destruction, or, in other words, to provide ample opportunity for their propagation in a degree commensurate with their nature in that respect. And to accomplish this highly important end the people finally conceived that the whole subject could be the better and more justly treated by legislation wholly in the control of the state legislature and such as is authorized by the provision of the constitution above quoted herein. So, in considering said provision, keeping in mind the reasons thus suggested as the animating cause of the adoption thereof, and at the same time keeping in view the nature or character of the power with which the legislature is thus invested. the conclusion seems to be inevitable that, by said provision, it was intended, as the petitioner contends is true, to clothe the state legislature with sole and exclusive control and power, so far as legislation is concerned, over the fish and game of the state, and, therefore, to take from local political subdivisions of the state any right which they might have had prior to the adoption of said provision of the constitution legislatively to deal with or regulate the matter of pursuing fish and game. Therefore, our opinion is that the language of section 25½ is mandatory and not merely permissive, as the use of the auxiliary verb "may" as among the operative words of the provision might, upon first blush, imply.

The word "may" as used in a statute or constitution is often interpreted to mean "shall" or "must." Such interpretation always depends largely, if not altogether, on the object sought to be accomplished by the law in which that

word is used. It seems to be the uniform rule that, where the purpose of the law is to clothe public officers with power to be exercised for the benefit of third persons, or for the public at large—that is, where the public interest or private right requires that the thing should be done—then the language, though permissive in form, is peremptory. As was said by the supreme court of the United States in *Supervisors* v. *United States,* 4 Wall. 436, [18 L. Ed. 419], construing a statute of the state of Illinois similarly phrased to the provision in question here: "What they [public officers] are employed to do for a third person, the law requires shall be done. The power is given, not for their benefit, but for his. It is given as a remedy to those entitled to invoke its aid." (See, also, *Hayes* v. *County of Los Angeles,* 99 Cal. 74, [33 Pac. 766].)

But the provision of the constitution in question has been given by our own courts a construction in accord with the views above expressed. (*Ex parte Prindle,* 7 Cal. Unrep. 223, [94 Pac. 871].) In that case, which was decided by the district court of appeal of the second district, so much is said which has a direct bearing upon the question before us here that it would extend this opinion to an unreasonable length to attempt to reproduce herein all that is contained therein which is forcibly pertinent to this case. It will suffice to say that the court in that case held that the provision of the constitution under consideration is mandatory, notwithstanding the employment of the word "may" therein.

In the case of *In re Cole,* 12 Cal. App. 290, [107 Pac. 581], while not necessary therein to decide the question, this court, nevertheless, in considering the effect of section 25½ of article IV of the constitution, strongly intimated that its language and terms were mandatory. The court had under consideration an ordinance of Sonoma County prohibiting the catching of fish in rivers, streams, or sloughs in said county. The ordinance considered in that case was regularly passed by the board of supervisors previous to the adoption into article IV of the constitution section 25½, and the court held that, as the ordinance involved a valid act at the time of its enactment, and, as the constitutional provision was prospective and not retroactive in its operation, said provision could not be held, in view of article XXII of the constitution, to have effected a repeal of said ordinance or impaired its validity

in any respect.    The court, however, used this significant language: "The most that could be urged by the petitioners is that the power to regulate the pursuit of fish and game had been taken away from the board of supervisors and given exclusively to the legislature."

In considering the question before us, we have not been unmindful of the fact that by section 11 of article XI of the constitution, the people have granted to the counties, cities, towns, and townships of the state the right to make and enforce, within their respective limits, "all such local, police, sanitary, and other regulations as are not in conflict with general laws." Nor are we antagonistic to the proposition that, although fish and game constitute the property of the people of the state in their collective capacity, the matter of the regulation of the pursuit of fish and game is within the police power (*Ex parte Maier*, 103 Cal. 476, [42 Am. St. Rep. 129, 37 Pac. 402]), and that it would be within the competence of local legislative boards to regulate that matter under the power granted to them by said section 11 of article XI in the absence of any limitation placed by the people upon the exercise by them of said power, and so long as such legislation did not contravene any general law of the state.    But, as has been shown, and as is clearly manifest, the power of local boards to regulate or legislate upon the subjects of fish and game has been withdrawn by the people by their expression in section 25½ of the constitution and subsequent to the delegation by them of the power which such local authorities may exercise under section 11 of article XI.

That the people may, at any time, legally withdraw from local authorities the power of police or any portion thereof which they have by their constitution granted to such authorities, is a proposition far beyond the realm of all debate.    The police power, like the right of eminent domain, is an attribute of sovereignty.    In this country it resides or inheres in the sovereignty of the states, and sovereignty, which means all the power inherent in a commonwealth, is, generally, exercised by the state itself, but it is so exercised because, only, the power has been delegated to it by the people of the state, in whom, primarily, it resides.    It therefore follows as a matter of course that the people may delegate or grant that power to any competent authority, to be exercised exclusively or concurrently with some other authority or to a limited extent,

with the residue of the power or its ultimate control in some other body or authority, or in the people themselves. In the case of the fish and game of the state, the people have, as seen, withdrawn or taken from counties, cities, and towns whatever power they might have exercised over those subjects by virtue of section 11 of article XI of the constitution. This they had the right to do, and in doing it still left to counties, etc., plenary power to make and enforce proper and necessary police regulations upon a variety of subjects coming within the scope and purview of the power of police. It follows that there cannot be justly claimed to exist any inconsistency or repugnancy between section 11 of article XI and section 25½ of article IV. It is true, as has been suggested, that the legislature might not have exercised the authority vested in it by section 25½ of article IV, and it is equally true that had it failed to do so, it could not be compelled by any known legal process to legislate upon the subject of fish and game. But this does not mean that the exclusive power to regulate the pursuit of fish and game is not still in that body under that provision of the constitution, or that counties and cities, etc., may regulate the matter on the failure of the legislature to exercise the right and power so conferred upon it. It is, under the terms of the constitutional provision, solely for the legislature to determine when and how the taking of fish and the killing of game shall be regulated, as well as to determine what portions of the state shall be included within fish and game districts and what portions shall be excluded therefrom and not subject to any regulations upon those subjects.

We conclude from the reasons herein stated that counties, cities, towns, and townships are no longer authorized to legislate upon or in any manner or degree interfere in the matter of the pursuit of fish and game; that, consequently, Ordinance No. 118 of Humboldt County, under and by virtue of the provisions of which it is sought to prosecute and punish the petitioner, is void, and that his arrest and restraint are, therefore, illegal.

The petitioner is accordingly discharged.

Ellison, J., *pro tem.*, concurred.