TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
:
:
OPINION                        :
:
of                             :     No. 86-607
:
JOHN K. VAN DE KAMP            :     <u>SEPTEMBER 3, 1987</u>
Attorney General           :
:
RONALD M. WEISKOPF            :
Deputy Attorney General      :
:
------------------------------------------------------------------

THE HONORABLE PETER R. BONTADELLI, ACTING DIRECTOR OF THE DEPARTMENT OF FISH AND GAME, has requested an opinion on the following question:

May a county prohibit the use of steel-jawed leghold traps within its jurisdiction?

CONCLUSION

A County may, by ordinance, ban the use of steel-jawed leghold traps within its jurisdiction where such action is necessary to protect the public health and safety and where the ordinance only incidentally affects the field of hunting preempted by the Fish and Game Code.

ANALYSIS

A steel-jawed leghold trap is a spring-powered device used to trap animals with two metal jaws that clamp shut on an animal's leg when it steps on the trap's pressure-sensitive trigger. Some have urged banning the use of such traps because they consider it cruel to the animals caught in them. Since a trap is nonselective, it is indiscriminate in what it snares, and persons (especially children), pets, and other non-targeted animals have been caught in them. These considerations have prompted the enactment in at least one county of an ordinance banning the use of steel-jawed leghold traps throughout the county. Livestock owners oppose such bans claiming that traps offer an effective means of controlling coyotes, dogs and other

predators from preying on their livestock.  The Fish and Game Code  permits  the taking  of certain animals by the use of steel-jawed leghold traps.[1]  We are asked whether a county ordinance prohibiting the use of steel-jawed leghold traps within the jurisdiction of the county is preempted by state law.

Article XI, section 7 of the California Constitution provides that a county "may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general law."  This legislative authority is often referred to as the "police power", a power local legislative bodies share with the State Legislature.   Regulating the taking of fish and game is within the police power. (Ex Parte Maier (1894) 103 Cal. 476, 483.)   Before the turn of the century the regulation of fish and game was accomplished both by state law (ch. 1, tit. XV of the Penal Code entitled "Violation of the Laws for the Preservation of Game and Fish" commencing with § 626) and by local ordinances.

In 1902 the people adopted article IV, section 25 1/2 of the Constitution providing:

"The legislature may provide for the division of the state into fish and game districts, and may enact such laws for the protection of fish and game therein as it may deem appropriate to the respective districts."

In Matter of Application of Cencinino (1916) 31 Cal.App. 238, 244 the court held that by enacting article IV, section 25 1/2 of the Constitution the people had withdrawn and taken from

[1]Fish and Game Code section 4000 et seq govern trapping. Section 4002 provides: "Fur-bearing mammals may be taken only with a trap, a firearm, bow and arrow, poison under a proper permit, or with the use of dogs." (Traps are defined in 14 Cal. Admin. Code § 4365.5(a) to include steel-jawed, leg-hold, conibear, snares, dead-falls, cage traps and other devices designed to confine, hold, grasp, clamp, or crush mammals.)   Section 4000 defines fur-bearing mammals to include mink, several foxes, racoon, beaver, badger, and muscrat.   Section 4001 fixes the open season on furbearing mammals between November 16 and the day before the last day of February.   Section 4004 prohibits the use of certain kinds of steel-jawed leghold and other traps and requires the trapper to visit and remove all animals from traps once daily.   Section 4005 requires a trapping license to trap with certain exceptions.   Section 4009 makes it unlawful to remove or disturb the trap of any licensee while the trap is being used by the licensee on public land or on land where the licensee has permission to trap.   Section 4009.5 authorizes the Fish and Game Commission to adopt such regulations as it determines to be necessary to regulate the taking and sale of fur-bearing mammals or nongame mammals taken under a trapping license. Section 4180 provides: "Fur-bearing mammals which are injuring property may be taken at any time and in any manner, except that if leg-hold steel-jawed traps are used to take such mammals, the traps and the use thereof shall be in accordance with the provisions of subdivisions (a) and (b) of Section 4004.

counties and cities whatever power they might have excercised over the subjects of fish and game and that the counties and cities were "no longer authorized to legislate upon or in any manner or degree interfere in the matter of the pursuit of fish and game." The Supreme Court gave its approval to the holding in the Cencinino case in In re Makings (1927) 200 Cal. 474, 477-478 and reiterated (at p. 479) that "it was the purpose of this amendment to the constitution to take from local authorities the right to regulate the fish and game of the state and to invest such power exclusively in the legislature."

Thus the power of counties to adopt ordinances regulating the pursuit of fish and game terminated in 1902 with the adoption of article IV, section 25 1/2 (now art. IV, § 20) of the Constitution. Insofar as a county ordinance undertakes to regulate the field of law regarding fish and game which article IV, section 20 reserves to the Legislature, it is void. However, counties are still empowered by article XI, section 7 to legislate other matters within the police power which are not preempted by state law such as ordinances which protect the health and safety of persons.

It is apparent that an ordinance may serve more than one purpose and affect more than one field of law. Such is the case with the ordinance presented in this opinion request. Since persons may get caught in steel-jawed leghold traps, prohibiting their use is clearly a measure which protects their health and safety. It is equally clear that prohibiting the use of such traps affects the taking of furbearing animals in a manner authorized by the Fish and Game Code. Since counties are authorized to legislate such a prohibition as a health and safety measure but not as a fish and game regulation how is the validity of such a prohibition to be determined? We think the answer is found in the case of People v. Mueller (1970) 8 Cal.App.3d 949.

In Mueller the city adopted an ordinance prohibiting the deposit of garbage, refuse and waste matter in the waters of its harbor. One of its provisions was that "No person shall place or allow to be placed any live or dead bait in the unconfined harbor [sic] of the Harbor except when such bait is attached to a hook in the act of fishing." The defendants were convicted of violation of this provision in the ordinance as a result of their method of fishing in

---

Health and Safety Code section 450 provides:

> "The board of supervisors of each county shall take such measures as may be necessary to preserve and protect the public health in the unincorporated territory of the county, including, if indicated, the adoption of ordinances, regulations and orders not in conflict with general laws, and provide for the payment of all expenses incurred in enforcing them."

This section imposes a duty upon counties to regulate to preserve and protect public health. People ex rel. Deukmejian v. County of Mendocino (1984) 36 Cal.3d 476, 484.

the harbor. Such fishing involved suspending a light over the water in a particular place and throwing bait called "chum" within the lighted circle and scooping up fish attracted to the surface by the chum using net-like chickenwire scoops on the end of long poles. On appeal the defendants contended that the provision of the ordinance on which they were convicted was void because it constituted a limitation upon methods of fishing and was void because it invaded an area of regulation preempted by the Fish and Game Code.

In addressing the preemption argument the Mueller court noted that the purpose and scope of the ordinance was the prevention of pollution of the waters of the harbor and that nothing in state law preempted the field of prevention of local water pollution. The court also noted that the state has preempted the field of fishing citing In re Cencinino, supra. The court's opinion then states (at 954):

> "That proposition, however, is not determinative of the validity of the challenged ordinance. Preemption by the state of an area of the law does not preclude local legislation enacted for the public safety which only incidentally affects the preempted area. [Fn.] Protection against pollution equates with protection of the public safety."

The footnote reads: "It seems beyond question, for example, that a municipality is empowered to prohibit fly casting from crowded piers or docks to protect members of the public from being snagged by a low back cast."

The court held that the effect of the ordinance on fishing "is incidental to the principal purpose of the legislation", the prevention of pollution, and that coverage of the field of regulation of fishing by the Fish and Game Code thus did not invalidate the local ordinance. The judgments of conviction were affirmed.

The Mueller case governs the answer to the question presented in this opinion request. Like the ordinance in Mueller the ordinance prohibiting steel-jawed leghold traps has two apparent purposes. One is the regulation of hunting preempted by the Fish and Game Code, the other the protection of public safety within the county's police power. The Mueller case requires a determination of the principal purpose of the ordinance and whether the ordinance affects the preempted field of hunting incidentally. If the principal purpose of the ordinance is the protection of public safety and it affects hunting incidentally, the ordinance is a valid exercise of the county's police power.

The request for the opinion in this case did not provide us with any basis for a determination of the principal purpose of the ordinance. Thus our response must be conditioned upon the determination a court would make when confronted by a particular ordinance and evidence concerning its purpose and the effect it will have on hunting in the area covered thereby.

A court's determination in this regard would no doubt be influenced by a number of factors. Any evidence in the ordinance or its legislative history regarding the purpose of its enactment would be very significant. However, a court would not be bound by a declaration of the board of supervisors as to the purpose of the ordinance when evidence indicates some other purpose was the principal motivation for its enactment. (Coulter v. Pool (1921) 187 Cal. 181.) The nature of the area affected by the ordinance, its impact upon the trapping of game and furbearing mammals, and the degree to which the public has access to and utilizes the area will be significant. Thus an ordinance banning steel-jawed leghold traps in the City and County of San Francisco, an almost entirely urbanized area, would likely be held to have public safety as its principal purpose with hunting only incidentally affected. On the other hand, contrary findings might be expected with respect to the same ban in a rural county with a significant fur trapping tradition.

In 58 Ops.Cal.Atty.Gen. 519 (1975) we concluded that while a city ordinance may restrict the shooting of bows and arrows in those areas of the city where such a restriction is reasonably justified by public safety requirements, such an ordinance may not indiscriminately extend to areas wherein public hunting may take place without endangering human life or property. In that opinion we considered and applied the Mueller case in a manner which now gives us pause. On page 528 we distinguished between the ordinance banning the use of bows and arrows within the City of Burbank and the ordinance in Mueller. First we noted that the Mueller ordinance did not prohibit the activity of fishing but merely a collateral activity - chumming. The opinion then states:

> "The hunting ordinance before us absolutely prohibits the activity of hunting - a field of regulation similarly occupied by state constitutional and statutory provisions. This ordinance poses more than an incidental effect, it prohibits the entire activity within the city limits."

We believe the quoted language needs correction. The Burbank ordinance did not absolutely prohibit the activity of hunting, it prohibited only the use of bows and arrows. Just as the Mueller ordinance did not prohibit the activity of fishing, only the collateral activity of chumming, the Burbank ordinance did not prohibit the activity of hunting, but only the use of bows and arrows. The statement in the last sentence quoted above that the Burbank ordinance prohibits the entire activity (of hunting) within the city limits is therefore too broad and thus does not support the preceding conclusion that the ordinance poses more than an incidental effect (on hunting). Insofar as said opinion asserts that the effect of a ban on the use of bows and arrows on hunting could never be incidental it is disapproved. Whether a ban on a particular means of hunting has an incidental affect on hunting or not is a question of fact to be decided upon the evidence in the particular case as we have indicated above.

We conclude that a county may, by ordinance, ban the use of steel-jawed leghold traps within its jurisdiction where such action is necessary to protect the public health and safety and where the ordinance only incidentally affects the field of hunting preempted by the Fish and Game Code.

* * * * *