# STATE EX REL. MOUNTRAIL COUNTY et al. v. AMUNDSON et al.

(135 N. W. 1117.)

**Counties — divison of — what constitutes "public property" — adjustment of liabilities.**

Mountrail county was organized out of territory formerly embraced in Ward county, and at the meeting of the county commissioners of both counties pursuant to § 2336, Rev. Codes 1905, for the purpose of effecting a settlement between the counties of the indebtedness and property therein, a disagreement arose as to the proper construction of said statute, the Mountrail county commissioners contending that the bonds given or money paid by Ward county for roads and bridges remaining within such original county should be deducted from the total indebtedness thereof, upon the ground that such roads and bridges constitute public property owned by the county within the meaning of subdivision 2 of said section. On the other hand, the commissioners of Ward county deny that they should be charged with the cost of such roads and bridges, and contend that the cost of record books purchased by the old county for use in its various county offices should not be charged to it. They also contend that in such accounting and settlement Ward county should not be charged for any public property owned by it, except on the basis of its actual value.

*Held,* construing said section, that neither of such contentions are correct, and that the trial court properly held that the roads and bridges do not constitute public property owned by the county within the meaning of said statute; that the cost, and not the actual value of the public property remaining in Ward county, must be accounted for without taking into consideration any depreciation or appreciation in the value of such property, and that the record books remaining in the various county offices of Ward county are public property owned by it, and the cost thereof was, therefore, properly debited to Ward county.

Opinion filed March 20, 1912.   Rehearing denied April 29, 1912.

Appeal from District Court, Ward County; *Charles F. Templeton,* Special Judge.

Mandamus by the state, on the relation of Mountrail courty and others against Arne Amundson and others, as members of the board of county commissioners of the county of Ward. From the judgment directing the terms of settlement between the counties, both parties appeal.

Affirmed.

*R. O. Miller, H. J. Linde, George R. Robbins,* and *George A. Bangs,* for Mountrail County.

If the legislature does not otherwise provide, it will be presumed that the counties are to be continued precisely as they were created by the division, the old county subject to its former liabilities and owning its property, and the new county starting out afresh, with no liabilities and owning no property save such as may be within its boundaries, and entitled to no credits from the old county. 11 Cyc. 349; 7 Enc. 908, 913; 1 Cooley, Taxn. 414; 1 Dill. Mun. Corp. 63; North Hemstead v. Hemstead, 2 Wend. 109; Laramie County v. Albany County, 92 U. S. 307, 23 L. ed. 552; People v. Alameda County, 26 Cal. 642; Beals v. Amador County, 28 Cal. 449; Beals v. Amador County, 35 Cal. 624; Los Angeles County v. Orange County, 97 Cal. 329, 32 Pac. 316; Orange County v. Los Angeles County, 114 Cal. 390, 46 Pac. 173; Tulare County v. Kings County, 117 Cal. 195, 49 Pac. 8; Kings County v. Tulare County, 119 Cal. 509, 51 Pac. 866; Colusa County v. Glenn County, 124 Cal. 498, 57 Pac. 477; San Diego County v. Riverside County, 125 Cal. 495, 58 Pac. 81; Riverside County v. San Bernardino County, 134 Cal. 517, 66 Pac. 788.

Ward County should be charged with the amounts expended for roads and bridges remaining therein. 4 Am. & Eng. Enc. Law, 2d ed. 921; Elliott, Roads & Streets, §§ 52, 77; Christian County Ct. v. Rankin, 2 Duv. 502, 87 Am. Dec. 505; Lawrence County v. Chattaroi R. Co. 81 Ky. 225; Louisville & N. R. Co. v. Whitley County Ct. 95 Ky. 215, 44 Am. St. Rep. 220, 24 S. W. 604; Greenup County v. Maysville & B. S. R. Co. 88 Ky. 663, 11 S. W. 774; Leslie County v. Southern Lumber Co. 28 Ky. L. Rep. 335, 89 S. W. 242; Bidelman v. State, 110 N. Y. 232, 1 L.R.A. 258, 18 N. E. 115; Ft. Covington v. United States & C. R. Co. 8 App. Div. 223, 40 N. Y. Supp. 313, affirmed in

156 N. Y. 702, 51 N. E. 1094; Palatine v. Canajoharie Water Supply
Co. 90 App. Div. 548, 86 N. Y. Supp. 412, affirmed in 184 N. Y.
582, 77 N. E. 1197; Lenox v. State, 61 Misc. 28, 114 N. Y. Supp.
746; Corwin v. Cowan, 12 Ohio St. 629; Wagner v. Cleveland & T. R.
Co. 22 Ohio St. 563, 10 Am. Rep. 770; Perry County v. Newark, S. &
S. R. Co. 43 Ohio St. 451, 2 N. E. 854; Chambersburg & B. Twp. R.
Co. v. Franklin County, 6 Serg. & R. 229; Shirk v. Carroll County,
106 Ind. 573, 5 N. E. 705, 7 N. E. 251; Troy v. Cheshire R. Co.
23 N. H. 83, 55 Am. Dec. 177; Monmouth County v. Red Bank & H.
Turnp. Co. 18 N. J. Eq. 91; Com. v. Fitzgerald, 164 Mass. 587, 42
N. E. 119; State ex rel. Neeves v. Wood County, 41 Wis. 28; Howard
County v. Chicago & A. R. Co. 130 Mo. 652, 32 S. W. 651; Hookset
v. Amoskeag Mfg. Co. 44 N. H. 105.

*Dudley L. Nash,* states attorney, and *George L. Ryerson,* Assistant,
(*Scott Rex* of counsel), for Ward County.

Depreciation, deterioration, and decay are to be taken into account in
making the computation under subdivision 2 of the statute. Lawrence
County v. Mead County, — S. D. —, 62 N. W. 131; Vermont Loan
& T. Co. v. Whithed, 2 N. D. 101, 49 N. W. 318; Gaar, S. & Co. v.
Sorum, 11 N. D. 171, 90 N. W. 802; State ex rel. Flaherty v. Hansen,
16 N. D. 347, 113 N. W. 371; People v. Ballard, 134 N. Y. 303, 17
L.R.A. 737, 32 N. E. 62; Manston v. McIntosh, 58 Minn. 525, 28
L.R.A. 605, 60 N. W. 672; Church of Holy Trinity v. United States,
143 U. S. 457, 36 L. ed. 226, 12 Sup. Ct. Rep. 511; Burleigh County
v. Kidder County, 20 N. D. 27, 125 N. W. 1063; Re Fremont & B.
H. Counties, 8 Wyo. 1, 54 Pac. 1073; Shoshone County v. Thompson,
11 Idaho, 130, 81 Pac. 73; Forest County v. Langlade County, 91 Wis.
543, 63 N. W. 760, 65 N. W. 182.

FISK, J.    The facts necessary to a correct understanding of the
questions involved on these appeals are not seriously in dispute, nearly
all of such facts having been stipulated.    In brief they are as follows:

Mountrail county, which was formerly embraced within the territory
of Ward county, was, at the general election in 1908, duly segregated
therefrom and set apart as Mountrail county pursuant to law.    Such
new county was organized in January, 1909, and thereafter the commis-
sioners of the two counties met pursuant to law and attempted to effect

a settlement of the property and indebtedness between the two counties. They failed to agree as to the statutory rule which they should follow in making such settlement, and for the purpose of obtaining a judicial determination of the questions in dispute, relators, both in their capacity as individual taxpayers and as members of the board of county commissioners of Mountrail county, instituted mandamus proceedings against defendants as members of the board of county commissioners of Ward county. Issue was joined, and, as before stated, the facts were nearly all stipulated, and at the conclusion of the trial the district court found that there was a balance of $6,301.95 due from Mountrail county to Ward county, and entered judgment requiring the former to deliver to the latter its bonds for such balance.

From such judgment both parties have appealed. The learned trial court found that the total outstanding indebtedness of the original county of Ward on July 1, 1909, was $349,468.06; that the amount of outstanding bonds given and money paid for public property owned by and remaining within the limits of the original county of Ward on July 1, 1909, was $140,369.49; that the public funds of Ward county on hand July 1, 1909, excluding special funds, such as fire, school, road, and other funds, was $164,891.70; that after subtracting the last two items from the total indebtedness of Ward county a balance remains of $44,206.87, and that the portion thereof which Mountrial county should pay to Ward county, according to the comparative assessed valuations of the respective counties, is the sum of $6,301.95.

The questions in dispute are: —

1st. Is Ward county entitled to credit for any depreciation in the value of the property remaining within her territorial limits, and should she be charged with any appreciation in the value of such property?

2d. In such settlement should Ward county be charged with the amount expended by her in the construction of roads and bridges remaining within its limits, Mountrail county contending that the roads and bridges therein should be considered and treated as property within the meaning of the statute which we will hereafter notice.

3d. Included within the total outstanding indebtedness of Ward county is the amount of $79,649 in the form of bonds and warrants for material and labor in the construction of roads and bridges remaining

23 N. D.—16.

within the limits of Ward county; and the question is, Should Ward county be charged with the amount of this item, on the theory that such roads and bridges constitute property? And,

4th. The facts disclose that Ward county had expended the sum of $17,976.80 for record books consisting of permanent records for use in the various county offices, and should Ward county be charged therewith in such accounting?

We find no difficulty in arriving at the conclusion that the first question should be answered in the negative. The controlling statute, (Rev. Codes 1905, § 2336) is not susceptible of the construction contended for in behalf of Ward county. This section requires the county boards at their joint session "to ascertain as near as may be the total outstanding indebtedness of the original county, . . . and from such total they shall make the following deductions: . . . 2. The amount of outstanding bonds given or money paid for public property owned by and remaining within the limits of the original county." The words of the statute above quoted are unambiguous and leave no room for construction. If the property for which the bonds were given or money paid is still in existence and remaining in the original county, such county must be debited with the cost thereof as shown by the bonds given or money expended therefor, irrespective of its actual value or of any depreciation or appreciation in value of such property. The legislature, in its wisdom, saw fit to adopt the cost and ignore the actual value of such property as a proper rule in effecting such settlement; and whether such rule is equitable or inequitable the courts have no concern. Burleigh County v. Kidder County, 20 N. D. 27, 125 N. W. 1065.

The second and third questions are more difficult to answer. In behalf of Mountrail county it is strenuously contended that Ward county should be charged in such settlement with the amounts expended for roads and bridges remaining therein, and such contention is challenged in behalf of Ward county with equal vigor. Are the roads and bridges, or either of them, which have been constructed by Ward county and which remain therein "public property owned by . . . the original county," within the meaning of subd. 2, § 2336, Rev. Codes, 1905, and that therefore the amount of outstanding bonds given or money paid therefor must, pursuant to said section, be deducted from the total in-

debtedness of Ward county? In order to answer such question in the affirmative, we are required to hold that such roads and bridges are the property of Ward county. In behalf of Mountrail county it is insisted that Ward county has, at least, an insurable interest in such roads and bridges, and that such insurable interest constitutes ownership within the statute. Conceding the correctness of such premise, does it necessarily follow that the conclusion is sound? It is no doubt true that a county or other governmental subdivision of the state which has constructed bridges under legislative authority has a qualified interest therein, but does such qualified interest rise to the dignity of ownership within the legislative intent as disclosed in the statute in question? In other words, did the legislature intend to charge the old county with property in which it had merely a qualified interest or ownership, and that, as a mere trustee for the general public? Section 44a of Elliott on Roads & Streets, cited by counsel for Mountrail county, contains the statement: "The public, and not the local governmental subdivisions, are the owners of such bridges." Counsel for Mountrail county have cited numerous cases holding that a county or other governmental subdivision of a state may maintain an action to recover for injuries to roads and bridges constructed by them, but these cases merely hold that such governmental subdivisions have a qualified interest only in such roads and bridges, and the courts in most of the cases are careful to thus restrict their holdings. It is generally held, however, in accordance with Mr. Elliott's statement as above, that the public, and not the local governmental subdivision, is the owner thereof; the latter in a sense being the trustee therefor for the general public.

It would seem plain that such a qualified interest or ownership as entitled the county to insure its bridges or to enable it to maintain actions for injuries to its roads and bridges does not constitute such ownership as is contemplated in subd. 2, § 2336, Rev. Codes, which is to serve as a basis of settlements between old and new counties where a division has taken place. If the governmental subdivision is the owner in the common and general acceptance of the term, then the courts in the many authorities cited by counsel for Mountrail county would have placed their decisions upon that ground, instead of sustaining the county's right to recover because of its *qualified* interest in such roads

and bridges. These authorities serve to show that the county is not the owner except to a qualified extent. .

We are agreed that when the legislature in § 2336, supra, prescribed that from the total indebtedness of the old county there should be deducted "the amount of outstanding bonds given or money paid for public property owned by and remaining within the limits of the original county," it intended to embrace only such public property as the old county had a proprietary interest in. In other words, that property owned by the public generally, the county having a mere qualified interest therein as above stated, was not contemplated by the legislature in the enactment of said section. A very important sidelight favoring this construction is the fact that the legislature, in providing for settlements between townships where a change of township lines is made, was careful to provide that road scrapers, plows, etc., shall be taken into account in effecting a settlement between the townships; but no mention is made of the highways. Rev. Code, § 3227. If roads and bridges are to be deemed an asset of the old county in effecting a settlement between the old and the new county, it would seem strange that the legislature did not treat them as assets of the old township in prescribing a rule for effecting a settlement between the townships.

Of course it is no doubt true that before material for roads and bridges is actually appropriated to the public use, as well as after it ceases to be devoted to such use, the county would have a proprietary interest and ownership therein, but while it is devoted to such public use it belongs to the public, and not to the county, except in a qualified sense, as above stated. The decision of this court in Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092, to the effect that the township exercises merely a governmental function of the state as to highways and bridges, and hence is not liable for failure to repair the same, is inconsistent with the theory of a proprietary right or ownership by the township in such highways and bridges; for if it had such proprietary interest and ownership its duty to make repairs would seem plain. In People ex rel. Van Keuren v. Esopus, 74 N. Y. 310, the court held that "highways are not the property of the town, and the use is in the public, not for the benefit of the inhabitants of the town alone, but of the whole community." See also Freedom v. Weed, 40 Me. 383, 63 Am. Dec. 670; Gallia

County v. Holcomb, 7 Ohio, pt. 1, p. 232; Karr v. Putnam County, 170 Ind. 571, 85 N. E. 1.

We are unable to agree with counsel's statement in effect that the county has no greater interest or ownership in its courthouse and public grounds than it has in its highways and bridges. It is true that each are paid for by public moneys; but as to the courthouse, grounds, and other property the county has a proprietary interest therein, and may, under certain conditions, sell and transfer title to another. Not so, however, as to roads and bridges. They may not be sold, leased, or otherwise disposed of by the county, for they belong to the general public.

Another matter shedding light upon the legislative intent is the fact that under this statute no account is to be taken of the roads and bridges in the new county, and it seems strange, indeed, that the legislature would charge the old county for moneys expended in the construction of roads and bridges remaining therein, and not charge the new county for such roads and bridges as may have been constructed within its territory. Such a construction would manifestly work injustice to the old county. It is quite possible that in some instances more money may have been expended for roads and bridges in the new county than in the old prior to such segregation, but the statute makes no provision for charging the new county with such items.

Instead of the rule prescribed by the statute, as we construe it, being inequitable, it is, to our minds, most equitable. The organization of the new county effects no change whatsoever as to the benefits to be derived in the future by the citizens of the new county from the roads and bridges in the old county. They will have the benefit thereof in the future the same as they had in the past, and consequently there is no equitable reason why they should not bear their just proportion of the cost of constructing the same.

This brings us to the only remaining point in the case, which involves the question as to whether Ward county should be charged with the item of $17,976.80, which it is stipulated that such county expended in the purchase of record books for use in its various county offices. We understand that these are permanent record books now in the various county offices of Ward county and in which valuable records are contained. Such item was included by the trial court as a portion of the

money expended by Ward county for public property remaining therein at the date of the attempted settlement. We are fully agreed that such ruling was correct. These record books are not only of great value, but they are indispensable, and they clearly constitute public property owned by Ward county within the meaning of subd. 2 of § 2336, Rev. Codes. The fact that they may not have a commercial value is not made a controlling test or any test under the above statute. If they are public property and owned and retained by the county of Ward, as they most certainly are, then their cost price must be accounted for and deducted from the total indebtedness of Ward county on such settlement; for such is the plain legislative mandate, regarding the wisdom of which mandate the courts have no concern.

The judgment appealed from is, for the foregoing reasons, in all things affirmed, neither party to recover any costs on appeal.