STATE EX REL. FURNISH ET AL.; RESPONDENTS, *v.* MULLEN-DORE ET AL., APPELLANTS.

(No. 3,823.)

(Submitted November 23, 1916.  Decided December 19, 1916.)

[161 Pac. 949.]

*New  Counties—Indebtedness — Apportionment—Bridges—Certiorari—Mandamus—Parties.*

Public Boards—Error Within Jurisdiction—*Certiorari.*
  1.  Error committed by a board of commissioners appointed to adjust the indebtedness between an old and a newly created county —a function judicial in character—in taking bridges into consideration as county property, constitutes error within jurisdiction not correctible by *certiorari*, even though provision is not made for an appeal or some other mode of review of the board's action.
*Certiorari*—Office of Writ.
  2.  The office of the writ of *certiorari* is to annul, modify or affirm the action of an inferior tribunal; it cannot supply defects or restrain excesses.
Appeal and Error—Moot Questions—Judgment—Effect.
  3.  The judgment of the district court in modifying on *certiorari* the findings of a board of commissioners intrusted with the adjustment of the indebtedness between an old and a new county, when the writ did not lie, amounted to a judgment upon a moot question, and therefore was not effective for any purpose.

  [As to questions reviewable upon *certiorari*, see note in 40 Am. St. Rep. 29.]

Counties—Bridges—Not County Property.
    4. Bridges belong to the public and not to any particular county, irrespective of the source from which the funds—special or otherwise—for their construction were derived.

Public Boards—New Counties—Apportionment of Indebtedness—*Mandamus.*
    5. *Mandamus* is the proper remedy to compel commissioners appointed to adjust county indebtedness between an old and a new county to reassemble and correctly apportion such indebtedness; the fact of their adjournment being immaterial.

Same—*Mandamus*—Parties.
    6. *Mandamus* proceedings to compel commissioners to correctly apportion the indebtedness between an old and new county should be brought in the name of the county, and not by the board of county commissioners in their official capacity.

*Appeal from District Court, Custer County; Daniel L. O'Hern, Judge.*

*Certiorari* by the State on the relation of R. T. Furnish, Robert Yokley and Charles Daly, as Commissioners of the County of Custer, Montana, against Henry Mullendore, John Oliver, and Thos. Wear, Commissioners, T. S. Garlow, Secretary, and F. C. Bunn, Clerk and Recorder for Fallon County, Montana. Judgment for relators and defendants appeal. Reversed with directions to quash the writ and dismiss the proceedings.

*Mr. Chas. J. Dousman* and *Mr. E. S. Booth,* for Appellants, submitted a brief and argued the cause orally.

*Mr. Frank Hunter* and *Mr. Geo. W. Farr,* for Respondents, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

During the year 1913, under the provisions of Chapter 112 of the Laws of 1911 as amended by Chapter 133 of the Laws of 1913 (Laws 1911, p. 205; Laws 1913, p. 484), providing for the formation of new counties, Fallon county was created out of territory theretofore included in Custer county. The organization of the board of commissioners of the new county was perfected on December 8, 1913. The board at once gave to the

governor the notice required by section 6 of the Act. As therein provided, the governor appointed three commissioners to ascertain and declare the proportion of the indebtedness of Custer county outstanding at the date of the organization of Fallon county, which should be paid by the latter, as provided in section 7 of the same Act. The three commissioners so appointed were John Oliver, residing at Ekalaka, Fallon county; Thomas Wear, residing at Miles City, Custer county; and Henry Mullendore, residing at Glendive, Dawson county. On January 2, 1914, the commissioners convened at Ekalaka, then the county seat of Fallon county, and, having effected an organization by choosing Mullendore for their chairman and T. S. Garlow for their secretary, proceeded to perform the duty enjoined upon them. On February 2, Mullendore and Oliver, a majority of the commissioners, certified the result of the proceedings in a report in duplicate to the respective boards of commissioners of Custer and Fallon counties. They found Fallon county indebted to Custer county in the sum of $44,486.20. This result was reached by the majority by pursuing the method of adjustment pointed out by section 7 of the Act. In ascertaining the value of the property to be included in the adjustment, with the county courthouse, the county poor farm, moneys in the treasury, *etc.*, they took into account and treated as property belonging to Custer county several steel bridges recently constructed or then substantially completed, whereas, if these bridges had been disregarded and omitted from the adjustment, Fallon county would have been found to be indebted to Custer county in a much larger sum. In a minority report made by Commissioner Wear, who thought that all bridges should be excluded, the amount due from Fallon county was found to be $113,919.96. Thereupon the commissioners of Custer county, deeming themselves beneficially interested, applied to the district court of that county for a writ of *certiorari* to have the adjustment, as certified by Mullendore and Oliver, reviewed and modified in so far as bridges had been considered county property and included in it. Upon service of the writ the defendants

appeared and moved for an order quashing it, and dismissing the proceeding on the ground that the court was without jurisdiction to issue and determine it. The motion having been denied, the court heard the controversy upon a return of the record of the proceedings of the commissioners, aided by explanatory statements under oath by Mullendore and Oliver. It held that bridges are not county property within the meaning of the statute, and modified the result reached by the majority report, by excluding all bridges. It also modified the report in other minor particulars, and adjudged the amount due from Fallon county to be $105,190.15. The cause is before this court on appeal from this judgment.

The first contention made by defendants is that, however **[1]** erroneous may have been the result reached by the majority of the commissioners, the error cannot be corrected by *certiorari.* "A writ of review may be granted by the supreme court (and in proceedings for contempt, in the district court, by any justice of the supreme court), or by the district court or any judge thereof, when an inferior tribunal, board, or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal nor, in the judgment of the court any plain, speedy and adequate remedy." (Rev. Codes, sec. 7203.) That the writ may be successfully invoked under this provision it is indispensable that it appear (1) that the inferior court, tribunal, board or officer the validity of whose action is questioned has exceeded its or his jurisdiction; (2) that there is no appeal; and (3) that there is no plain, speedy or adequate remedy other than *certiorari.* (*State ex rel. Whiteside* v. *First Judicial District Court,* 24 Mont. 539, 63 Pac. 395.) It may be conceded at the outset that the power vested in such commissioners under their appointment is judicial in its nature, and that their action would, in a proper case, be subject to review by *certiorari,* just as may be the action of a board of county commissioners in a like case. (*State ex rel. Jacobson* v. *Board of County Commrs.,* 47 Mont. 531, 134 Pac. 291.) It may be conceded, also, that no appeal lay from the final action

of the commissioners because the statute does not provide for one. Did the commissioners exceed their jurisdiction?

By referring to the statute defining the functions of the commissioners (sec. 7), we do not find any statement as to what shall be considered property of a county, nor any enumeration classifying the items to be considered by them. True, the phrase "property belonging to the old county," and similar expressions employed therein, would seem to refer only to property owned by a county in its proprietary capacity, as distinguished from that in which it has only a qualified interest as trustee for the general public, such as public highways and the like. (Elliott on Roads and Streets, 3d ed., sec. 52.) It is also true that this court has held that, in view of the express provision of the statute upon the subject (Laws 1913, sec. 3, Chap. 1, p. 139), a bridge is a part and parcel of the highway upon which it is built (*State ex rel. Foster* v. *Ritch,* 49 Mont. 155, 140 Pac. 731; *State ex rel. Donlan* v. *Board of Commrs.,* 49 Mont. 517, 143 Pac. 984); nevertheless we do not think that in including the bridges the commissioners exceeded their jurisdiction in the sense meant by the statute. They were empowered to make the adjustment. To accomplish this they were vested with the power to determine what was the indebtedness of Custer county, what property belonged to it, what part of this, if any, was within the boundaries of Fallon county, what was the value of all of it and, after making the proper charges to Custer county and deducting these from the gross sum of the indebtedness, to declare the balance due from Fallon county. This necessarily involved a determination of questions of law and fact, because otherwise no final result was possible. As is the case with all such bodies, they might err in their judgment, but it was within their power to decide the questions presented during the course of their deliberations. This implied the power to decide wrong as well as right with reference to any particular matter, and though their decision might be manifestly erroneous, they did not, to this extent, lose jurisdiction of the subject matter which they had under consideration. The

error was error within jurisdiction. Otherwise, as was suggested in *State ex rel. Whiteside* v. *First Judicial District Court, supra,* the decision must have been right in any event, or there was excess of jurisdiction. The case is not made different by the fact that the legislature has not provided for an appeal or some other method of review. The defendants are right in their contention, and it must be sustained.

It should be sustained for another reason. When the commissioners had filed their report in duplicate with the boards of commissioners of Custer and Fallon counties, their power, so far as they could voluntarily act, ceased to exist. It could not thereafter be put in motion except by judicial process appropriate to compel the commissioners to reassemble and proceed in conformity with the law. The office of the writ of *certiorari* [2] is to annul, modify or affirm the action of the inferior tribunal, board or officer to whom it is directed. (Rev. Codes, sec. 7210.) It cannot supply defects or restrain excess. Recognizing the true scope of the writ, the court in this case did not [3] go further than modify the result as reached by the commissioners; in other words, it merely declared the law which should have controlled the commissioners, by ascertaining what it found to be the correct balance. The result is that its judgment was for all practical purposes upon a moot question, and was not effective for any purpose. In pronouncing the decision, the presiding judge expressed the opinion that some other appropriate proceeding must still be resorted to in order to compel the board to reassemble and proceed in conformity with his view. In this he was correct, but should have declined to direct a judgment which could not have any effective operation.

The foregoing remarks dispose of this case. It is not out of place, however, to notice briefly some of the other questions submitted for our consideration.

Counsel for the defendants contend that the decisions in [4] *State ex rel. Foster* v. *Rich* and *State ex rel. Donlan* v. *Board of Commrs., supra,* are not conclusive of the ownership of the bridges in question, because they had been or were being

constructed by the use of funds derived from the sale of bonds for this special purpose. We do not think there is any merit in this contention. In such cases, funds are designated as "special" because they have been provided by the sale of bonds by the board of county commissioners for the particular purpose of constructing bridges, after securing the consent of the electors. These funds may not be expended for any purpose other than that for which they have been provided. (Const., Art. XIII, sec. 3.) But the method by which they have been provided does not in the least affect the relation of the county to the public property acquired by means of them. If such funds have been provided for county purposes, such as the erection of a county courthouse, title to the property for which they are expended vests in the county in its proprietary capacity. If, however, they have been provided for the construction, repair, or improvement of public roads, bridges, *etc.,* the expenditure of them inures to the public benefit, just as does the expenditure the commissioners may make at any time for the same purposes out of the general funds of the county. If the highways belong to the public, it must follow that anything permanently affixed to them, either in the way of repairs or in the form of completed structures, such as bridges and the like, becomes a part of them, and as much of public right as the highways themselves. It is undoubtedly true that materials purchased by a county for the construction of a bridge, for instance, belong to the county until they are affixed to the highway. After this has been done, however, especially after the structure is substantially completed, the right of the public is complete, because in legal theory the structure has become permanently affixed to the public property. A different situation might call for a different conclusion, such as when the structure has not been so far completed that it is of any practical use. In such a case it might well be said that the public right has not attached.

After this controversy arose, the legislature amended section 7 of the Act, *supra,* by providing that steel bridges in use for a shorter period than ten years shall be considered county prop-

erty.  (Chap. 139, Laws 1915, p. 301.)  The question presented here will therefore probably not arise again.

Counsel for plaintiff submit the question whether, if *certiorari* [5] is not the proper remedy, *mandamus* may be successfully invoked.  That the latter is the proper remedy we think is clear.  "It may be issued  *   *   *  to any inferior tribunal, corporation, board or person, to compel the performance of an act, which the law specially enjoins as a duty resulting from an office, trust or station."  (Rev. Codes, sec. 7214.) Under the decisions in *State ex rel. Foster* v. *Rich* and *State ex rel. Donlan* v. *Board of Commrs.*, *supra*, it was the manifest duty of the commissioners to include in the adjustment only property belonging to Custer county, and exclude all other. This latter they failed to do, thus being guilty of a delinquency affecting substantially the rights of Custer county.  They then adjourned.  In order to perform their duty correctly, they must reassemble and formulate another report, excluding the property improperly included.  *Mandamus,* it seems, is the only remedy adequate to compel this result.

It is not to the point to say that the commissioners have adjourned and cannot now act.  Their office cannot be considered ended until they have performed their duty properly.  Until they have done this, they are not beyond appropriate legal process to correct their dereliction.  Nor is it to the point to say that the writ will control their discretion or compel them to render any particular decision.  They have no discretion in the matter.  The writ should go whenever there is no speedy or adequate remedy in the ordinary course of law and the person seeking it is entitled to have the defendant perform a clear legal duty.  (*Raleigh* v. *First Judicial District Court,* 24 Mont. 306, 81 Am. St. Rep. 431, 61 Pac. 991; *State ex rel. Bean* v. *Lyons,* 37 Mont. 354, 96 Pac. 922; *State ex rel. Stuewe* v. *Hindson,* 44 Mont. 429, 120 Pac. 485.)  The decision in *State ex rel. Mountrail County* v. *Amundson,* 23 N. D. 238, 135 N. W. 1117, cited by counsel for relators, exemplifies the use of *mandamus* in a case similar in its facts to the one in hand, and besides contains

an instructive discussion of the ownership of bridges on the public highways, and the rights and duties of county commissioners in relation to them. It is entirely in accord with our own views, both as to rights involved and the remedy awarded.

All the parties have assumed throughout that this proceeding [6] was properly instituted by the relators in their official capacity as commissioners of Custer county. Assuming that a taxpayer might have prosecuted it on behalf of the county, the county commissioners, as such, could not do so. The county is the real party in interest. It is a body corporate (Rev. Codes, sec. 2870). Its powers are exercised by the commissioners, it is true (Rev. Codes, sec. 2871), but they are not therefore authorized to bring actions in their official capacity on behalf of the county. There is no provision of law authorizing them to do so. In the absence of such provision, the county by its corporate name is the proper party to bring "all actions and proceedings touching its corporate rights, property and duties." (Rev. Codes, sec. 2872.) Therefore the proceeding should have been brought in the name of the county.

The judgment is reversed, with directions to the district court to quash the writ and dismiss the proceeding.

*Reversed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.