STATE EX REL. JUDITH BASIN COUNTY, APPELLANT, *v.* POLAND ET AL., RESPONDENTS.

(No. 4,898.)

(Submitted November 4, 1921. Decided December 19, 1921.)

[203 Pac. 352.]

*New Counties — Adjustment of Indebtedness—Constitution— "County Property"—Incomplete Bridges—Record Books— Mandamus.*

Constitution—Words and Phrases—Interpretation.
  1.  In ascertaining the meaning of words used in the Constitution, they will be presumed to have been used in the sense in which they were used generally at the time the Constitution was adopted, and interpreted in the light of the statutes then existing and continued in force by schedule 1 of that instrument.

New Counties—"County Property"—Adjustment of Indebtedness.
  2.  "Property of the county" within the meaning of section 3, Article XVI, Constitution, under which, when a new county is created, the net indebtedness of the old county, its ratable proportion of which the new one must pay, is to be determined by deducting from its total indebtedness the value of all property of the old county, *held* to mean such property as a county holds and can sell.

Constitution—Legislative Construction—How to be Viewed.
  3.  While legislative construction of a term used in the Constitution is not binding upon the courts, it is entitled to most respectful consideration.

New Counties—Bridges—Property of State.
  4.  A completed bridge used by the public is a part of the public highway and belongs to the state, and is therefore not county property such as may be considered in adjusting the indebtedness between an old and a new county.

---

2.  New counties and their relation to old counties, see note in 20 Am. St. Rep. 676.

[61 Mont. 600.]

Counties—Construction and Maintenance of Bridges.

    5. While the obligation to build and maintain highways, including bridges, primarily devolves upon the state, it may impose, and in Montana has imposed, that duty upon the counties and municipalities.

New Counties—Incomplete Bridges not County Property—Adjustment of Indebtedness.

    6. *Held,* that a partly finished bridge constructed with funds obtained by a bond issue is not such county property as it may sell, and therefore cannot be taken into consideration as county property (paragraph 2) in the adjustment of indebtedness between an old and a new county.

*Mandamus*—Lies When.

    7. The writ of mandate lies only to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station, and therefore will not issue to do a thing beyond the power or duty of the person sought to be compelled.

New Counties—Indebtedness—Adjustment—*Mandamus*—When not Proper Remedy.

    8. *Held,* that where the board of commissioners of a county a portion of which was thereafter included in a new county, in order to obtain favorable action by the electors of that portion on a proposed issue of road bonds, passed a resolution, amounting to a promise merely, that in the event the bonds were authorized, a certain proportion of the receipts would be devoted to road improvement in their district, their breach of trust in thereafter failing to carry out their promise could not be remedied by writ of mandate to compel the board of adjusters of the indebtedness between the old and the new county to charge the old county with the amount the district should have received under the resolution, the New Counties Act (Laws 1919, Chap. 226) not authorizing the adjusters to take such action.

Same—County Records—Not County Property to Enter into Adjustment of Indebtedness.

    9. Public record books of a county are not county property to be taken into consideration by a board of adjustment of county indebtedness between an old and a new county.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

MANDAMUS on the relation of Judith Basin County against R. G. Poland and others, Commissioners. From an adverse judgment, relator appeals. Affirmed.

*Mr. John B. Muzzy* and *Messrs. Pray & Callaway,* for Appellant, submitted a brief; *Mr. Lew L. Callaway* argued the cause orally.

*Mr. H. G. Bennett, Mr. Edgar J. Baker, Mr. Wm. M. Blackstone* and *Messrs. Norris, Hurd & Rhoades,* for Respondents,

submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 2, 1920, Judith Basin county was created from a portion of Cascade county and from a portion of Fergus county. Pursuant to statute, the governor appointed these respondents members of a board to adjust the indebtedness between the counties, and, the board having completed its labors, made its report and adjourned; this proceeding was instituted on behalf of Judith Basin county to secure a writ of mandate to compel the board to reassemble and correct certain errors which it is alleged had been committed. The trial court sustained a demurrer and motion to quash, and rendered and had entered a judgment dismissing the proceeding. The relator appealed.

Section 3, Article XVI, of our Constitution provides that, when a new county is created, it shall be held to pay its ratable proportion of the then net indebtedness of the old county, the net indebtedness to be determined by deducting from the total indebtedness the value of all property of the old county.

Primarily the question presented is this: What is meant by [1, 2] the terms "property of the county" or "county property" as employed in the Constitution above? These general rules are applicable: (1) The presumption will be indulged that the terms were employed in the sense in which they were used generally at the time the Constitution was adopted (*State ex rel. Rowe* v. *Kehoe,* 49 Mont. 582, 144 Pac. 162); and (2) the terms will be understood in the light of existing statutes continued in force by schedule 1 of the Constitution (*State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392). Upon the creation of Montana territory, the first legislative assembly passed an Act which provided: "That each organized county within this territory, shall be a body corporate and politic; and as such, shall be empowered for the following purposes: First,

to sue and be sued. Second, to purchase and hold real and personal estate for the use of the county, and lands sold for taxes, as provided by law. Third, to sell and convey any real or personal estate owned by the county," *etc.* (Bannack Statutes, p. 498.) That statute continued in force from 1864 until 1895 (Cod. Stats. 1871, p. 433; Comp. Stats. 1887, p. 842), and must be held to have been in contemplation at the time the Constitution was adopted in 1889. As understood at that time, "county property" was such property as a county held and could sell, but no one would contend that a county could have sold all or any part of a public highway lying within its boundaries, and the reason it could not do so is that a public highway is not owned by the county, though it may be compelled to keep it in repair. In other words, the territorial legislature and the constitutional convention made clear the distinction between property held by a county in its proprietary capacity and property subject to its jurisdiction as a governmental agency—a distinction recognized by all of the authorities. In 1895 a statute was enacted in substantially the same terms as the Bannack statute above (Pol. Code, sec. 4230, subd. 10), and that statute has been carried forward and is in effect at the present time (sec. 2894, subd. 10, Rev. Codes). As the Bannack statute indicated the meaning of the terms "county property" at the time the Constitution was adopted, so the Act of 1895 indicates the legislative understanding of the meaning of the terms as employed by the framers of the [3] Constitution, and, while a legislative construction is not binding upon the courts, it is entitled to most respectful consideration (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386), and in this instance we adopt it, since it meets our views. From the creation of the territory to the present day every county has had express authority to sell any property belonging to it, or, in other words, the power to sell has at all times been a controlling consideration in determining whether particular property is county property.

With the preliminary question settled we proceed to an [4-6] application of the definition of "county property" to the facts of this case. By a vote of the qualified electors, Cascade county was authorized to issue bonds to the amount of $408,000, the money derived therefrom to be expended in erecting two bridges over the Missouri River at Great Falls—one at First Avenue North and the other at Tenth Street North. At the time Judith Basin county was created, $98,000 in round numbers had been expended upon the First Avenue bridge and $150,000 upon the Tenth Street bridge, but neither bridge was complete or capable of being used by the public. In adjusting the indebtedness between Judith Basin county and Cascade county, the board refused to treat these unfinished bridges as county property. It is conceded, as it must be, that a complete bridge used by the public is a part of the public highway (*State ex rel. Donlan* v. *Board,* 49 Mont. 517, 143 Pac. 984), and, speaking generally, is not county property, and cannot be considered in adjusting the indebtedness between the old county and the new one (*State ex rel. Foster* v. *Ritch,* 49 Mont. 155, 140 Pac. 731). We are not intimating an opinion as to the validity of section 7, Chapter 226, Laws of 1919, as it is not involved in this proceeding. It is the contention of the appellant that neither of these incomplete structures is a bridge in the sense that it provides a passageway over the Missouri River, and therefore the public right has not attached, and the two structures should have been considered the property of Cascade county of the value of $248,000, and that amount deducted from the county's indebtedness. It is beyond controversy that these incomplete bridges constitute property, but whether they constitute county property within the meaning of the Constitution (Art. XVI, sec. 3, above) is not to be determined by reference to the popular definition of the term "bridge," but by reference to the character of the property itself, and the property takes character from the character of the fund out of which payment is made and from the relation which the county sustains to the fund and the prop-

erty acquired by its expenditure. Primarily the obligation to build and maintain public highways, including bridges, devolves upon the state, but, in the absence of constitutional restrictions, the state may either discharge the trust directly or impose the duty upon one or more of its agencies (*Yocom* v. *City of Sheridan*, 68 Or. 232, 137 Pac. 222), and in this state the duty is imposed upon the counties and municipalities. The money derived from the sale of the bonds constituted a trust fund which could not be used for any purpose other than the construction of the two bridges (Const., Art. XIII, sec. 3), and, when completed, the bridges belong to the state, and not to Cascade county (9 C. J. 464). Whenever property is acquired by the state through the expenditure of funds impressed with a trust for that purpose only, even though the funds are raised by the county, the county acts in its goyernmental capacity as a trustee for the public and the agency through which the state acquires the property. In their incomplete state these structures merely represent so much of the trust fund as had been expended upon them, and the county could no more divert the incomplete structures from the purpose to which the funds are dedicated than it could divert the funds themselves. It could not sell or otherwise dispose of these structures, but can be compelled, as trustee for the public, to complete them and realize the purpose for which the funds were appropriated by the vote of the people. They are not county property, because the county has not that absolute control and disposition of them essential to ownership as understood at the time the Constitution was adopted. Expressions in conflict with these views will be found in *State ex rel. Furnish* v. *Mullendore*, 53 Mont. 109, 161 Pac. 949, but the most casual reading of the opinion will disclose that those expressions are *obiter dicta*, and upon further consideration we are satisfied they are erroneous.

In 1919 the electors of Fergus county were called upon to [7, 8] authorize the issuance of bonds to obtain money for the improvement of the public highways. The creation of Judith Basin county was then being agitated, and the electors of that

portion of Fergus county, afterwards incorporated in Judith Basin county, were opposed to the bond issue upon the theory that, if the new county was created, it would be held to pay its proportion of the indebtedness and might not receive any benefit. To allay this opposition, the commissioners of Fergus county adopted a resolution to the effect that, if the bonds were authorized, the money received from the sale of them should be apportioned among the several road districts according to the assessed valuation of the property therein. The bonds were authorized, and $350,000 worth sold prior to the creation of Judith Basin county, and most of the money expended upon the highways in Fergus county, excluding the territory embraced in Judith Basin county. If the money had been apportioned according to the terms of the resolution before the creation of Judith Basin county, the road districts which were incorporated in the new county would have been entitled to receive $106,000, and it is the contention of appellant that Fergus county should be charged with that amount as an offset *pro tanto* against the amount of Fergus county's indebtedness to be assumed by Judith Basin county. At the time the resolution was adopted by the Fergus county board, the fund was not in existence. It had not even a potential existence. Whether it would ever be created depended upon the will of the qualified voters. In no sense, then, can it be said that the resolution constituted an appropriation of the fund. At most, it amounted to a promise of good faith and fair dealing in the expenditure of the fund if it should be created, but the promise, however solemnly made, did not constitute an appropriation of the fund, and the failure of the board to carry the resolution into effect after the fund came into existence amounted, at most, to a breach of trust. But these respondents, as a board of adjustment, were without authority to compel Fergus county to carry into effect its declared purpose. The writ of mandate will issue only to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station. (Sec. 7214, Rev. Codes.) It will not

issue to compel the performance of an act which would be useless, ineffectual or unavailing as a remedy or beyond the power or duty of respondents to perform it. (*State ex rel. Beach* v. *District Court,* 29 Mont. 265, 74 Pac. 498.) The board of adjustment is a specially constituted tribunal possessing only such powers as are expressly conferred by law or necessarily implied from those expressed, and nowhere in the statute (Chap. 226, Laws 1919) can such authority be found as is now sought to be imposed upon these respondents. If, by the adoption of the resolution, any obligation was created, it can be enforced only in the courts.

Complaint is made that the board of adjustment refused to [9] consider as county property the public record books kept by the officers of Cascade county and Fergus county, respectively. Although it must be conceded that these books constitute property, they are not county property within the meaning of the terms as employed in the Constitution. They are required to be kept, but for the use of the public generally. They are not subject to sale or other disposition and have no marketable value. This is in effect the decision in *Park County* v. *Big Horn County,* 25 Wyo. 172, 166 Pac. 674. A contrary conclusion was reached in *State ex rel. Mountrail County* v. *Amundson,* 23 N. D. 238, 135 N. W. 1117, but under a Constitution and statute so different from ours that the case is not authority here.

The judgment is affirmed.

*[Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and GALEN concur.