[L. A. No. 6377. In Bank.—February 19, 1920.]

## JOHN HENRY MUNDELL, Petitioner, v. DAVID B. LYONS, as Registrar, etc., Respondent.

[1] COUNTIES—ALTERATION OF BOUNDARY LINES—CREATION OF NEW COUNTIES—CONSTITUTIONAL LAW — SPECIAL ACT PROHIBITED.—The legislature has not the power to alter a county boundary by a special act, when section 3 of article XI of the constitution, which declares the legislature, by general and uniform laws, may provide for the alteration of county boundary lines and the formation of new counties, is read in the light of its history, which shows the section was designed to be prohibitory and a limitation upon the authority of the legislature.

[2] ID.—ACT OF 1919 UNCONSTITUTIONAL.—The act of the legislature of 1919 (Stats. 1919, p. 857), repealing sections 3909 to 3958 of the Political Code, which established and defined the boundaries of the various counties of the state existing at the time of the adoption of the code, and also adding eight new sections, numbered 3959 to 3966, which purported to do the same thing with regard to such counties and also with regard to the eight additional counties subsequently created, but which in some instances

changed the boundaries, is a special act and violative of section 3 of article XI of the constitution, which declares that the legislature by general and uniform laws may provide for the alteration of county boundary lines and for the formation of new counties.

APPLICATION for a Writ of Mandamus to compel the registration of a voter. Denied.

The facts are stated in the opinion of the court.

Don G. Bowker and R. M. Sheridan for Petitioner.

Edward T. Bishop for Respondent.

OLNEY, J.—The legislature of 1919 passed an act (Stats. 1919, p. 857) repealing sections 3909 to 3958, inclusive, of the Political Code as they then existed and substituting other sections in their place, and also adding eight new sections, numbered 3959 to 3966. The sections repealed established and defined the boundaries of the various counties of the state existing at the time of the adoption of the code. The new sections adopted purported to do the same thing with regard to such counties and also with regard to the eight additional counties subsequently created. In many instances the boundaries under the new sections are the same as under the old sections, or under the special acts applicable to particular counties. In other instances they are not. One boundary which was so changed was that between Los Angeles and Ventura Counties.

The petitioner is a citizen entitled to be registered and to vote in the county of his residence. He resides in a territory formerly a part of Ventura County but by the change in boundary mentioned now made a part of Los Angeles County if the act of 1919 mentioned be valid. He applied to the respondent, the registrar of voters of the latter county, to be registered and was refused on the ground that he was not a resident of that county, but still a resident of Ventura County. He has now applied to this court for a writ of mandate to compel the respondent to register him. He is entitled to the writ if he is in fact a resident of Los Angeles County, and the sole question is whether he is or not, and this in turn depends wholly on whether the statute purporting to change the boundary between the two counties is valid.

The respondent claims that the statute in this particular is unconstitutional.

The constitutional provision applicable is the portion of article XI, section 3, of our state constitution reading: "The legislature, by general and uniform laws, may provide for the alteration of county boundary lines, and for the formation of new counties." In their arguments before us it is assumed by counsel on both sides that this constitutional provision is one of limitation upon the power of the legislature and that the sole question is whether or not the statute of 1919 is a general and uniform law as the constitution requires.

The answer to the latter question seems to us apparent. It could not be questioned that if the legislature had passed an act dealing simply with the boundary between Los Angeles and Ventura Counties, it would not be a general law. Likewise, if the legislature had passed separate acts making each of the changes in county boundaries which the statute of 1919 seeks to make it could not be questioned but that each of such acts would be a special and not a general law. Now, the only difference in this case is that all of the changes are made by a single act. But it is almost too plain for words that legislative enactments, each of which is special in nature, are not made general in nature merely by combining them in a single act. Such an act is not a general law in any sense of the word, but merely a combination of a lot of special laws. It follows that if the assumption of counsel that the constitutional provision is a limitation upon the power of the legislature is correct, the act is invalid.

The assumption mentioned, however, presents a more difficult question. The language of the constitution is not that of prohibition or limitation, or even of mandate, but of permission. It is that "The legislature, by general and uniform laws, may provide," etc. Any limitation or prohibition can arise from such language only by implication. In the absence of any consideration other than the language itself, such implication would not be plain and clear and would not be a sufficient justification for declaring a statute which the legislature had assumed to pass to be beyond its power. (*Fresno Nat. Bank* v. *Superior Court*, 83 Cal. 491, [24 Pac. 157].) The constitutional provision, however, must be read

in the light of its history, and so read its prohibitory intent is fairly plain.

Prior to 1894 the section of the constitution in question read entirely differently. It clearly left to the legislature the power by special laws to create new counties and to divide and alter old ones. The result was a series of attempts, some successful and some not, to have the legislature divide old counties and create new ones. These attempts were strongly backed on the one hand and, on the other, aroused strong opposition and bitter feeling. The legislature was annoyed and harassed to a degree by the importunities of those interested. Rumors, if nothing more, were current and public of the use of improper means to influence the members. The situation came to be such as to require a remedy in the judgment of both the legislature and the people. To provide such a remedy an amendment of article XI, section 3, of the constitution was proposed and adopted in 1894. The material portion of the section, as so amended, reads: "The legislature, by uniform and general laws, may provide for the formation of new counties."

It is at once evident that the section, as it so read, was designed to be prohibitory and a limitation upon the authority of the legislature. If it were permissive only, so that the legislature still retained the power to create new counties, it both failed of the very purpose for which it was adopted and was also wholly futile, since, without it, the legislature had the power, which it had frequently exercised, to do the very thing which the amendment gave it permission to do. Under such circumstances there was but one view which could reasonably be taken of it, and that was that the permission given was exclusive and implied a limitation that new counties should not be created in any other way. This, also, has been the construction subsequently given to the amendment in practice, at least in a negative way. The legislature has not since endeavored, in a single instance, to create a new county by special act, and, so far as we are aware, no attempt has ever been made to have it do so. This construction also was assumed to be the true construction in *Wheeler* v. *Herbert,* 152 Cal. 224, [92 Pac. 353].

In 1910 the section was again amended so as to include within its operation the alteration of county boundary lines, as well as the creation of new counties, and in this form the

section has continued to the present time. If the permission given for the formation of new counties was exclusive, and implied a limitation upon the exercise of that power, the added permission to alter county boundaries is necessarily of the same character and contains the same implied limitation. That such was the object of the amendment of 1910 is also apparent from the fact that it followed immediately upon the decision of this court in *Wheeler* v. *Herbert, supra,* that the alteration of county boundaries by special act did not come within the prohibition against the creation, in that manner, of new counties. This decision was rendered in October of 1907, and the amendment with relation to county boundaries was proposed at the next session of the legislature and adopted at the first general election following. The only possible purpose of the amendment was to avoid the effect of that decision. [1] Our conclusion is that the legislature has not the power to alter a county boundary by a special act. [2] The statute here is indubitably of that character and is, therefore, void.

We would add that what we have said would by no means necessarily apply to an act which merely established and made certain boundaries theretofore uncertain. The question as to the validity of such an act is not presented, and, concerning it, we express no opinion.

Writ denied.

Shaw, J., Lennon, J., Kerrigan, J., *pro tem.*, Lawlor, J., and Angellotti, C. J., concurred.

WILBUR, J., Concurring.—I concur in the reasoning and conclusion of Justice Olney. The interpretation of section 3, article XI, is in accordance with a long line of decisions interpreting the permissive clause of section 5, article XI. (*Dwyer* v. *Parker*, 115 Cal. 544, [47 Pac. 372]; *Knight* v. *Martin*, 128 Cal. 247, [60 Pac. 849].)