[S. F. No. 9908. In Bank.—November 12, 1921.]

JAMES W. ELDER et al., Petitioners, v. H. F. DOSS et al., Respondents.

[1] COUNTIES—FORMATION OF NEW COUNTY—PETITION—COMPLIANCE WITH ACTS OF 1907 AND 1909.—A petition for the organization of a new county out of territory wholly within the territory of an existing county which fails to comply with the requirements of the act of 1907, providing for the formation of new counties (Stats. 1907, p. 275), and also with the requirements of the amendatory act of 1909 (Stats. 1909, p. 194), is insufficient and properly denied.

PROCEEDING on application for a Writ of Mandamus, Dismissed.

The facts are stated in the opinion of the court.

Hartley F. Peart, Frank J. Burke and E. J. Dole for Petitioners.

G. W. Hoyle, District Attorney, for Respondents.

ANGELLOTTI, C. J.—This is an application for a writ of mandate to compel the board of supervisors of Sonoma

County to appoint a day for the hearing of a petition for the organization of a new county out of territory wholly within the territory of Sonoma County. The petition failed to show that the creation of the new county would not reduce the area of Sonoma County to less than one thousand two hundred square miles, and it is conceded that it would so reduce such area. Both the act of 1907 providing for the formation of new counties (Stats. 1907, p. 275), and the act of 1909 amendatory thereof (Stats. 1909, p. 194), the only statutes on the subject, provided as follows: "Nor shall any new county be formed which shall reduce to less than twelve hundred square miles the area of any existing county from which territory is taken to form such new county." The petition purported to be signed by more than one-half of the qualified electors living within the territory to be comprised in the new county, a sufficient compliance in that respect with the act of 1907, but it did not purport to be signed by sixty-five per cent of such qualified electors, as required by the amending act of 1909, or by not less than fifty per cent of the qualified electors residing in the county, as required by such amending act. For these reasons the board refuses to proceed on the petition, and denied the same.

At the very threshold plaintiffs are met by a condition that, in our opinion, requires a denial of their application. Their claim, in brief, is that the amendatory act of 1909 is void for failure of its title to sufficiently state its scope, with the result that the only act in force is that of 1907; and that the petition being signed by the requisite number of electors as prescribed by that act is sufficient in respect to signatures. With regard to the provision common to the act of 1907 and that of 1909, that no new county shall be formed which shall reduce to less than one thousand two hundred square miles the area of any existing county from which territory is taken to form such new county, the claim is that the provision is violative of our constitution for several reasons, and must be disregarded, leaving the act of 1907 in force without such provision.

It was said in *Los Angeles County* v. *Orange County*, 97 Cal. 329, 331, [32 Pac. 316]: "Counties are merely local subdivisions of the state, created by the legislature for governmental purposes, and are denominated public corporations for the reason that they are but parts of the machinery em-

ployed in carrying on the political affairs of the state. *The legislature, except as restrained by constitutional limitations, may change* their boundaries and extent, consolidate two or more into one, *or divide and create new counties out of the territory of one or more previously existing ones"* (italics ours). At the time of this decision, as now, the only constitutional provision on the subject was section 3 of article XI of the constitution, which then simply provided that "no new county shall be established which shall reduce any county to a population of less than eight thousand, nor shall a new county be formed containing a less population than five thousand; nor shall any line thereof pass within five miles of the county seat of any county proposed to be divided . . . " These were prohibitions pure and simple, and subject only to them the power of the legislature in the matter of the creation of new counties by either general or special law (see *Wheeler* v. *Herbert,* 152 Cal. 224, 228, [92 Pac. 353]; *Mundell* v. *Lyons,* 182 Cal. 289, [187 Pac. 950]) was unlimited. In 1894 the constitutional provision was amended by inserting at the beginning of the section the words "The legislature, by general and uniform laws, may provide for the formation of new counties, provided however that," and in 1910 it was further amended by inserting in this clause after the words "may provide for" the words "the alteration of county boundary lines and for," with the result that the section now reads: "The legislature, by general and uniform laws, may provide for the alteration of county boundary lines, and for the formation of new counties, provided, however, that no new county shall be established which shall reduce," etc. By the amendment of 1910 the minimum population of the old county was also fixed at twenty thousand instead of eight thousand, and the minimum population of a new county at eight thousand instead of five thousand matters immaterial here. The effect of these changes was considered in the recent case of *Mundell* v. *Lyons,* 182 Cal. 289, [187 Pac. 950], and it was substantially held that the provision authorizing the legislature "by general and uniform laws" to provide for the formation of new counties, was designed to prohibit the formation of new counties by the legislature by special act, or provision by the legislature for their formation in any other way than by general and uniform laws. In the language of *Mundell* v. *Lyons, supra,*

187 Cal.—27

"it is at once evident that the section, as it so read, was designed to be prohibitory and a limitation upon the authority of the legislature." It was simply another "constitutional limitation" upon the power of the legislature in the matter of the creation of new counties, which, subject to the prohibitions contained in the section, was still left with full power in such matters. Whether there should be *any* law under which new counties might be formed was left to the legislature. The language in this respect is entirely permissive, being: "The legislature, by general and uniform laws, *may provide,*" etc., and clearly the case is not one where the word "may" can be read as "shall" or "must." If, in its wisdom, it concluded that provision for the formation of new counties should be made, it could make it only "by general and uniform laws," and in view of its power in such matters, it seems perfectly clear that in such laws it could prescribe such conditions as it saw fit, in addition to and consistent with the conditions prescribed in the constitutional provision.

In the exercise of the power vested in the legislature, the provision against a reduction in area of the old county to less than one thousand two hundred square miles was inserted in the acts of both 1907 and 1909. Such, in the judgment of the legislature, was deemed an indispensable condition to the creation of a new county from the territory of an old county. We are aware of no authority that would warrant us in holding that the legislature would have enacted these laws in the absence of such a provision, even if we assume for the purposes of this decision that it is violative of certain provisions of our constitution inhibiting special legislation and requiring that all acts of a general nature shall have a uniform operation. It was the judgment of the legislature that no new county should be formed if its formation would have any such effect. [1] If, then, this provision is void, the whole act of 1907 must necessarily be void, and likewise the whole act of 1909. The result, if that is the case, obviously would be that no valid general and uniform law for the formation of new counties has been enacted. Without such a law there can be no proceeding for the formation of a new county, and plaintiff's petition was properly denied by the board of supervisors of Sonoma County. If, on the other hand, the act of 1907 was a valid enactment,

the petition was properly denied, for the reason that the formation of the proposed new county would be in violation of the terms thereof in the respect discussed, as prescribed both in such act and the amendatory act of 1909. In either event, plaintiff's proceeding before the board of supervisors must be held ineffective for any purpose.

Under the circumstances stated, discussion of the objections on constitutional grounds to the provision in these acts prohibiting reduction in area below one thousand two hundred square miles of the county from the territory of which the new county is proposed to be formed, as well as to the amendatory act of 1909, would be futile. We are not to be understood, however, as assenting to the claim that the area provision is invalid, or as expressing any opinion as to the objections made to the amendatory act.

The order to show cause is discharged and the proceeding dismissed.

Shaw, J., Lennon, J., Shurtleff, J., Lawlor, J., Sloan, J., and Wilbur, J., concurred.