[Sac. No. 6186. In Bank. May 4, 1951.]

JAMES S. DEAN, as Director of the Department of Finance et al., Petitioners, v. THOMAS H. KUCHEL, as State Controller, Respondent.

Frank K. Richardson, Ralph N. Kleps, Legislative Counsel, Chas. W. Johnson, Chief Deputy Legislative Counsel, and Joseph W. Paulucci, Deputy Legislative Counsel, for Petitioners.

Edwin J. Regan, Amicus Curiae on behalf of Petitioners.

Edmund G. Brown, Attorney General, Bert W. Levit, Chief Deputy Attorney General, Ralph W. Scott and W. R. Augustine, Deputy Attorneys General, for Respondent.

Robert L. Mann, Amicus Curiae on behalf of Respondent.

CARTER, J.—In 1947, the Legislature passed the "Wildlife Conservation Act of 1947" (Stats. 1947, ch. 1325; Am. Stats. 1949, ch. 1440; 3 Deering's Gen. Laws, Act 9250). It declares that the "preservation, protection and restoration" of wild life in the state and maintaining "high productivity" thereof is the public policy of the state. To achieve those aims "a single and coordinated program for the acquisition of lands and facilities suitable for recreational purposes and adaptable for conservation, propagation and utilization of the fish and game resources of the State is hereby established." (*Id.*, § 1.) In the Department of Natural Resources (Pub. Resources Code, § 501) there is created a Wildlife Conservation Board, consisting of the President of the Fish and Game Commission, an employee or executive officer of the

commission, chosen by the commission, and the Director of Finance. Three members each of the Senate and Assembly shall meet with the board and participate in its activities to the extent that such participation is not incompatible with their membership in the Legislature. (*Id.*, § 2.) The board shall study and determine the areas and land in the state most suitable for the production and preservation of wild life and for recreation, and, as a result of such study, shall determine what areas shall be acquired by the state "to effectuate a coordinated and balanced program resulting in the maximum revival of wild life in the State and in the maximum recreational advantages to the people of the State," (*Id.* § 3) and may authorize the acquisition of such areas by the Fish and Game Commission or the State Public Works Board. The commission, when authorized by the board shall construct such facilities as are suitable. Completed areas are to be managed by the commission. (*Id.*, § 3.) The money in the Wildlife Recreation Fund is available for expenditure under the act. Also in 1947, section 19627 of the Business and Professions Code was amended to create a Wildlife Restoration Fund and with the direction that $3,000,000 per year be paid into it from the license fees from horse race meetings. (Stats. 1947, ch. 1327, § 1.) The Conservation Act repealed Budget Item 245 for 1947, which amounted to $1,400,000 for use by the commission in construction, improvement and repairs, and equipment. (*Id.*, § 5.)

Pursuant to the act the board employed Seth Gordon to make a survey of conditions in California. Respondent, State Controller, has refused to draw warrants for the payment of the salary of Gordon and other employees on the ground that the act is unconstitutional. Petitioner seeks by this proceeding in mandamus to compel him to draw such warrants.

The constitutional provision invoked states: "The Legislature may provide for the division of the State into fish and game districts and may enact such laws for the protection of fish and game in such districts or parts thereof as it may deem appropriate.

"There shall be a Fish and Game Commission of five members appointed by the Governor, subject to confirmation by the Senate, with a term of office of six years . . . The Legislature may delegate to the commission such powers relating to the protection, propagation and preservation of fish and game

as the Legislature sees fit. Any member of the commission may be removed by concurrent resolution of the Legislature passed by the vote of a majority of the members elected to each of the two houses thereof." (Cal. Const., art. IV, § 25½, as amended in 1948.) That section was originally added to the Constitution in 1902 and then included only the first paragraph. By amendment in 1940, the second paragraph was added. The 1948 amendment made no change here pertinent.

It is asserted that by reason of the above constitutional provision the Legislature has no authority to delegate to anyone except the commission any powers relating to the protection, propagation and preservation of fish and game; that under the rule of construction, *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another thing), that result must be reached; and that, therefore, the Conservation Act is invalid because it delegates such powers to the conservation board. The applicable legal principles compel a contrary conclusion.

The fundamental rule has been stated by this court: "There is no express prohibition against the allowance or reimbursement for other expenses, but the respondent contends that under the doctrine of *expressio unius est exclusio alterius*, since the Constitution specified two items which may be allowed, any other allowances are invalid. This argument *overlooks* the fact that our Constitution is not a grant of power but rather a limitation or restriction upon the powers of the Legislature [citations] and 'that we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited.' (*Fitts* v. *Superior Court, supra* [6 Cal.2d 230 (57 P.2d 510)].)

If there is any *doubt* as to the Legislature's power to act in any given case, the *doubt should be resolved in favor of the Legislature's action.* Such restrictions and limitations are to be construed *strictly,* and are not to be extended to include matters not covered by the language used." (Emphasis added.) (*Collins* v. *Riley,* 24 Cal.2d 912, 915 [152 P.2d 169].) (See, also, *City of Los Angeles* v. *Post War etc. Board,* 26 Cal. 2d 101 [156 P.2d 746]; *Delaney* v. *Lowery,* 25 Cal.2d 561 [154 P.2d 674]; 5 Cal.Jur. 666-670.) Specifically, the express enumeration of legislative powers is not an exclusion of others not named unless accompanied by negative terms. (*Ex parte McCarthy,* 29 Cal. 395; *Macmillan Co.* v. *Clarke,* 184 Cal. 491 [194 P. 1030, 17 A.L.R. 288]; *Slavich* v. *Walsh,* 82 Cal.App.2d 228 [186 P.2d 35].)

There are numerous pertinent illustrations of the application of that principle. The provision that the Legislature shall protect from forced sale a homestead for heads of families does not limit its power to provide homesteads for others than heads of families. (*Hohn* v. *Pauly*, 11 Cal.App. 724 [106 P. 266].) Provisions authorizing removal of officers by trial for misdemeanor in office and the recall of specified officers, the first including and the second not including those of an irrigation district do not prevent the Legislature from authorizing the recall of the latter. (*Wigley* v. *South San Joaquin Irr. Dist.*, 31 Cal.App. 162 [159 P. 985].) A grant of power to county boards of education (Cal. Const., art IX, § 7) to "control" examination of teachers and "granting teachers certificates," did not oust the Legislature of power to establish the requisites for a teacher's certificate. (*Mitchell* v. *Winnek*, 117 Cal. 520 [49 P. 579].) The court there stated (p. 525) : "If, therefore, it be asserted, as it is here, in effect, that the power of the legislature to enact section 1503 of the Political Code does not exist, the restriction or limitation of that power must not only be found in the constitution, but the prohibition of its exercise must be clear. It must appear either from express words or by necessary implication. It is not asserted that there is any express prohibition, nor does the use of the word 'control' *necessarily* imply that the power of legislation upon the subject in question is prohibited to the legislature. Apparently inconsistent provisions must be harmonized, and each given some effect, if that be possible. To give the word 'control' the effect given it by the court below, some qualifying word, such as 'exclusive,' 'absolute,' or 'unlimited,' must be implied, since without implication that word does not necessarily imply that the legislature has no power to declare that holders of the specified diplomas should be entitled to certificates of the grammar grade."

Here there are factors which not only create a doubt that the Legislature was to be restricted to acting through the Fish and Game Commission in legislating in the fish and game field, but there are indications that it was not to be so limited. The wording of section 25½ points in that direction. It begins with the declaration that the *Legislature* may enact such laws for the protection of fish and game "as it may deem appropriate." The commission is created and to it the Legislature *may* delegate such powers relating to fish and game as *it sees fit.* █ The word "may" is at least reason-

ably susceptible of a permissive meaning rather than mandatory or prohibitory, and it has been held that when such word is used it will not create a restriction on the legislative power even though the Constitution (Cal. Const., art. I, § 22) also provides: "The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." (See *Fresno National Bank* v. *Superior Court,* 83 Cal. 491 [24 P. 157] ; *People* v. *Nye,* 9 Cal. App. 148 [99 P. 241] ; *Mundell* v. *Lyons,* 182 Cal. 289 [187 P. 950] ; but see *In re Cencinino,* 31 Cal.App. 238 [160 P. 167].) ▌ That it may delegate such powers as it may see fit indicates that it may fail to delegate any powers. It is true that the provision may impliedly mean that it may or may not, at its discretion, delegate such powers, but if it does, they must be conferred on the commission. But this is not necessarily the meaning or a necessarily implied negative; nor does it eliminate any doubt.

The important problems in the fish and game field have long been entrusted to the Legislature as the representative of all the people. "The people shall have the right to fish upon and from the public lands of the State and in the waters thereof, excepting upon lands set aside for fish hatcheries and no land owned by the State shall ever be sold or transferred without reserving in the people the absolute right to fish thereupon; and no law shall ever be passed making it a crime for the people to enter upon the public lands within this State for the purpose of fishing in any water containing fish that have been planted therein by the State; provided, that the *Legislature may by statute, provide for the season when and the conditions under which the different species of fish may be taken."* (Emphasis added.) (Cal. Const., art. I, § 25.) Moneys collected under fish and game laws are to be used in matters pertaining to that subject and "the Legislature may provide for the division of" such money. (Cal. Const., art. IV, § 25⅝.) It is said in *In re Marincovich,* 48 Cal.App. 474, 481 [192 P. 156] : "Wild game (included within which is fish, *People* v. *Truckee Lumber Co.,* 116 Cal. 397 [48 P. 374, 58 Am.St.Rep. 183, 39 L.R.A. 581]) always has belonged to all the people of the state. It is evident, therefore, that what the people of the state own they can alienate on such terms as they choose to impose, and that the Legislature, as the law-making representative of all the people, may dispose of the fish in the state's deep-sea waters on such terms as to it may seem best—subject only to the constitutional limitations

against discrimination. Within those limitations, the Legislature, for the protection of fish, may pass such laws as to it may seem most wise. The measures best adapted to that end are for the Legislature to determine . . ." ■ In view of those policies and principles, we do not believe the people in adopting the amendment to section 25½ intended to place a straitjacket on the Legislature by requiring it to act solely through the Fish and Game Commission thereby created. Nor does the argument presented to the voters for the amendment shed a contrary light. The measure was entitled for the ballot: "Amends Constitution, Article IV, section 25½. Creates Fish and Game Commission of five members, appointed by Governor subject to confirmation by Senate, with six year terms, removable by majority vote of Legislature; rotates terms by requiring terms of those first appointed shall expire one each year. *Empowers* Legislature to delegate to Commission powers relating to protection, propagation and preservation of fish and game." There is no intimation that the Legislature would be thereby prohibited from exercising other powers not delegated. The main thought was that it was empowered to delegate authority to the commission. The argument for this amendment states that it "will remove the Fish and Game Commissioners from political influence by:

"1. Providing a nonsalaried board of five commissioners.

"2. Appointment of commissioners for staggered terms so that no one administration can dominate the commission. This avoids a sudden reversal of policy.

"3. The Governor's appointments of commissioners are to be confirmed by the Senate which will nullify poor appointments.

"This proposition will give an opportunity to the Division of Fish and Game to manage the wild-life resources of the State on a basis of sound, scientific and factual knowledge by:

"1. Allowing Legislature to delegate regulatory powers to the commission so that regulations may be based on scientific knowledge rather than on supposition and hearsay from self-interested pressure groups.

"2. Allowing the commission to establish and follow through long term policies and plans for scientific fish and game management.

"3. Allowing the commission to employ and retain thoroughly trained personnel so that the management policies of 'sustained yield without endangering future supply' may be effectively carried through." The matter chiefly stressed

is the right of the Legislature to delegate powers to the commission, probably out of an abundance of caution to avoid the possibility that such delegation would constitute an unlawful delegation of legislative power. The major thought is the enlargement rather than curtailment of the power of the Legislature in dealing with problems with respect to fish and game.

There are cases which have applied the rule *expressio unius est exclusio alterius* in construing the Constitution. (See *Wheeler* v. *Herbert*, 152 Cal. 224 [92 P. 353]; *In re Werner*, 129 Cal. 567 [62 P. 97]; *Spier* v. *Baker*, 120 Cal. 370 [52 P. 659, 41 A.L.R. 196]; *Martello* v. *Superior Court*, 202 Cal. 400 [261 P. 476]; *People* v. *Wells*, 2 Cal. 198.) In the Wheeler case the restriction was positive and express. In the Werner case the court was dealing with an express and direct delegation of legislative power to cities and towns to enact police, etc, regulations (Cal. Const., art XI, § 11) and involved the fundamental structure of the state and local government. The Spier case involved the right of suffrage declared to be one of the "highest privileges" of citizens and was express and explicit. In the Martello case there was a complete change in the method of assignment of judges and a former provision that had also been stated by statute was omitted, thus indicating an implied repeal of the statute. The court in the Wells case was dealing with the separation of powers and felt that the construction given was necessary to preserve the courts from the uncontrolled domination of the Legislature.

It is urged by respondent that when the Constitution creates an office the Legislature cannot add to or detract from the powers such office traditionally or theretofore possessed (see *Love* v. *Baehr*, 47 Cal. 364). The instant constitutional provision, while it creates a Fish and Game Commission, does not give it any powers, and, as seen, it leaves with the Legislature the power to give it such authority as it "sees fit." It cannot be lightly assumed that the people intended to strip the legislative and executive departments of all power with relation to fish and game, and substitute for them, a Fish and Game Commission with unlimited power in this field. ■ For the same reasons it may not be said that it is a special provision controlling over a general provision (that creating the legislative department). ■ It must be conceded that the Legislature has all legislative power not expressly or by necessary implication denied to it by the Constitution. It is not like a provision creating an execu-

tive or judicial office, each of which departments is entitled to its sphere of authority under the separation of powers principle. The construction urged by respondent would result in a direct invasion of legislative power in a field in which such power has not been abridged by constitutional mandate.

If the people, by the amendment here involved, desired to repose in the commission created therein the exclusive power to control the fish and game resources of the state, this objective could have been achieved by employing language similar to that used in the provision for the control of the liquor industry in this state (see Cal. Const. art. XX, § 22).

There are objectives which the people may well have desired to achieve in adopting the instant constitutional amendment creating a Fish and Game Commission. They may have desired, as above noted, to make it clear, that the Legislature could, if it wished, delegate some of its powers in the specified field to such commission, regardless of the principle of separation of powers; that the members of the commission should have six-year terms and thus achieve more stability in administration (see constitutional provision fixing four years as term of office, Cal. Const. art. XX, § 16); and that the commissioners could be removed by a concurrent resolution adopted by a majority vote of the Legislature. We may not assume that the Legislature, by adopting the statute here involved, intended to defeat any of those objectives.

Let the writ issue forthwith.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.