THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT,

*v.*

EDMOND G. TOOMEY, DEFENDANT AND APPELLANT.

No. 9603.
Submitted Jan. 14, 1958. Decided May 23, 1958.
Rehearing Denied March 18, 1959.
335 Pac. (2d) 1051.

36

MR. JUSTICE ADAIR dissented and MR. JUSTICE ANGSTMAN dissented in part.

M. J. Hughes, Edmond G. Toomey, Ralph J. Anderson, Helena. Edmond G. Toomey and Ralph J. Anderson argued orally for appellant.

H. O. Vralsted, Tax Counsel, Board of Equalization, Helena, for respondent.

MR. CHIEF JUSTICE HARRISON:

This is an appeal by Edmond G. Toomey from a judgment

and decree in favor of the State upon five causes of action, each being for income tax upon income earned by the appellant in the years 1939, 1940, 1941, 1942 and 1943; the judgment in each cause of action providing that the amount of tax be doubled, and adding one per centum per month or fraction of a month from April 15 of each year, commencing with the year 1940 with respect to the first cause of action, through April 15, 1944, with respect to the fifth cause of action, until paid.

The State, in each cause of action, imposed the tax upon the income of appellant for each of the years in question under Chapter 204 of the Revised Codes of Montana, 1935, and acts amendatory thereof, which now appears as Chapter 49 of Title 84 of the Revised Codes of Montana, 1947.

It is the appellant's contention that Chapter 204 of the Revised Codes of Montana, 1935, and amendments, was during each of the applicable years, and now is, unconstitutional and void under the applicable provisions of (a) the Constitution of Montana, and (b) the United States Constitution.

In its complaint the State alleged that appellant filed his duly verified income tax return in each of the years, 1940, 1941, 1942, 1943 and 1944, but that he did not pay the amount of the tax or any part thereof, and there was still due and owing to the State the whole of the tax upon the income reported in the years heretofore specified, together with additional impositions (the amount of the tax doubled, plus one per centum for each month or fraction of a month from the time the tax was originally due to the date of payment).

Appellant answered, admitting he filed the returns for the years in question, but denying that any tax was due and owing the State. By way of further defense to each and all of the causes of action, the defendant alleged that the State is without right to proceed by this action, otherwise or at all, as set out in its complaint and the defendant is not indebted to the State and is not subject to any legal obligation, duty or liability to recognize, pay or discharge the asserted claim of the State, for the reason that said alleged personal income tax statute, as an

38

attempt to exert the taxing power of the State, is unconstitutional, null and void, in that it violates: (a) The Constitution of the United States, particularly the provisions of section 2 of Article IV thereof, respecting the privileges and immunities of defendant as a citizen of the State, as guaranteed against State action by section 1 of the Fourteenth Amendment, and in that the act violated both the equal protection clause and due process clause of the Fourteenth Amendment to the Constitution of the United States; and (b) The Constitution of Montana, and particularly the provisions of sections 1a, 7, 11, and 18 of Article XII and section 27 of Article III, of said State Constitution.

At the trial of the action, in addition to the facts admitted in his answer by appellant, it was adduced that the State of Montana, through the State Board of Equalization, had collected both property and income taxes in the years 1939, 1940 and 1941, but that from 1941 through June 30, 1944, the State collected no property taxes, but did collect income taxes for those years.

In its findings of fact and conclusions of law, the district court decided that the State had sustained each and every material allegation in its complaint by sufficient competent evidence to entitle it to the relief demanded; that defendant's answer was without merit; and that he was entitled to no relief whatsoever. The district court entered its judgment and decree in accordance with its conclusions of law and findings of fact. From this judgment the defendant has appealed.

Although the defendant, in his brief, has set out fourteen points upon which he contends this court may find Montana's "Income Tax Law" unconstitutional, which points ultimately resolve themselves into a paraphrase of defendant's answer, he has confined his argument in his brief to only two major points: (1) "Under all recognized rules of interpretation and construction section 1a of Article XII of the Constitution of Montana conditions the exercise of the legislative power to tax incomes upon (1) The exercise of that power upon each of the incomes of (a) persons, (b) firms, and (c) corporations, and (2) The

use of such power for the purpose of replacing property taxes.''

(2) ''The O'Connell and Mills cases [infra] should be re-examined and their utterances with respect to the equal protection of the laws rejected.''

In accordance with rules which this court has held themselves bound by, we will not discuss any issue which learned counsel have failed to argue, and will confine the decision of this case to the points raised in defendant's brief.

*Background.* The Montana Income Tax Law found its genesis in Chapter 181, Laws of 1933, and became effective by its terms on March 16, 1933, it remained substantially unchanged until the Thirty-fourth Legislative Assembly made extensive changes therein in 1955, by a series of Acts found in Chapters 58, 103, 163, 246 and 260, Session Laws of the Thirty-fourth Legislative Assembly, and in 1957, Chapters 138, 211, 212, 227, 228 and 233, Session Laws of the Thirty-fifth Legislative Assembly.

The ''income tax'' amendment (Article XII, section 1a) to the Montana Constitution was enacted by the people of the State of Montana at the general election of November 6, 1934, and proclaimed effective by the governor on December 6, 1934.

Before the enactment of Article XII, section 1a, the Supreme Court of Montana held Chapter 181, Laws of 1933, valid under the constitutional provisions existing in 1933, in O'Connell v. State Board of Equalization, decided July 19, 1933, 95 Mont. 91, 25 Pac. (2d) 114, and in Mills v. State Board of Equalization, decided May 12, 1934, 97 Mont. 13, 33 Pac. (2d) 563.

In the O'Connell case, there were two principal objections to the validity of Chapter 181: *First,* the act taxed ''property'' as defined by Article XII, section 17, Constitution of Montana, and therefore because of the graduated and progressive features of the tax, conflicted with Article XII, section 1 of our Constitution requiring the Legislature to levy a uniform rate of assessment and taxation on all property, and also conflicted with Article XII, section 9, forbidding the rate of taxation on real and personal property for state purposes to exceed two mills on each dollar of valuation, unless the proposed increase in tax rate

were submitted to the people at a general election; and *Second,* Chapter 181, Laws of 1933, violated the equal protection laws of the Constitution of the United States because it operated upon the net income of individuals while corporations engaged in similar lines of endeavor were exempted from the tax entirely.

In answering the first objection, this court held that an income tax is not a tax on property for the following reasons: (1) Our Constitution is not a grant but a limitation of power; (2) The Legislature had expressed its intention that the income tax should "not be classified or held *or construed to be property";* (3) The Enactment was borrowed from Idaho's law, and since the Idaho court had construed their "income tax" law not to be one on property it is presumed Montana borrowed the law with the Idaho construction; (4) The Constitutional definition of "property" (Article XII, section 17, Mont. Constitution) did not include income; (5) The Montana Legislature, insofar as not expressly prohibited from action by the Montana or United States Constitutions, had the general power to enact an income tax act; and (6) The Constitutional provisions invoked by protestants of the law did not (since they referred to "property" and *income* is not property) prohibit the Legislature from enacting Chapter 181.

As to the second objection, this court held that there was a reasonable basis for the separate classification of individuals and corporations for income tax purposes, and therefore the law was not vulnerable to attack under the Fourteenth Amendment to the Federal Constitution.

In the Mills case, supra, 97 Mont. 13, 33 Pac. (2d) 563, the court (1) Reaffirmed its holding in the O'Connell case that income is not property, that a tax upon incomes is not a tax on property, and that therefore Chapter 181 did not violate sections 1, 9 and 17 of Article XII of the Montana Constitution; (2) Held that the failure of Chapter 181 to levy an income tax upon corporations, as well as individuals (in the absence of the 1934 amendment to the Constitution), did not amount to a suspension or relinquishment of the right to tax corporations and thus did

not violate section 7, Article XII, Constitution of Montana; (3) Held that the State Board of Equalization had authority to construe Chapter 181 as retrospective in its operation because the language of the act showed that it was the intention of the Legislature to make the act retrospective in its operation there being no special constitutional limitation prohibiting retrospective legislation, except section 13 of Article XV, which had no application; (4) Held that the provisions of Chapter 181 providing for the deposit of a portion of the income tax collections to a state emergency relief fund, did not violate section 5 of Article X and section 4 of Article XII making it the duty of the counties to provide for the sustenance of persons who were unable to care for themselves and prohibiting the Legislature from levying a tax upon the inhabitants of counties for county purposes, because the fund in question was not one for county purposes and because section 5 of Article X did not prohibit the Legislature from also making provision whereby the state could assist in the care of persons unable to care for themselves; (5) Reaffirmed its position in the O'Connell case that the failure of the Legislature to impose an income tax upon corporations, while Chapter 181 imposed an income tax upon individuals, did not violate the equal protection clause of the Federal Constitution because a reason substantial in character existed for the discrimination; and (6) Held that section 1 of Chapter 40, Laws of Extraordinary Session 1933-1934, providing for a surtax in addition to the normal tax on net incomes imposed by Chapter 181, Laws of 1933, and construed by the State Board of Equalization as providing for a graduated and progressive surtax, and, because it did not so provide, the act resulted in great discriminations between taxpayers of substantially equal net incomes, which discriminations were so arbitrary that no rational basis. or reason for their existence could be suggested, and thus the rates specified therein violated the Fourteenth Amendment of the Federal Constitution and were invalid. The State Board of Equalization was enjoined from enforcing and attempting to collect the surtax specified in Chapter 40.

From the above resume it can be observed that this court, in both the O'Connell and Mills cases, was not faced with the argument presented by appellant in his first argument set out above.

In discussing the O'Connell case in his brief, appellant contends it abrogated certain fundamental rules of constitutional construction and impliedly gave the Legislature a *carte blanche* to write their own law uninhibited and unrestricted by our Constitution. The basis for these contentions is certain language found in the opinion which appellant, to our mind, distorts and moulds into a doctrine not contemplated by the court in that case, nor in our view does it amount to a fair interpretation of the language used. Appellant contends the O'Connell case stands for the proposition that *an income tax is not a tax on property because the legislative assembly said it was not intended as such,* and because the Montana Constitution did not expressly prohibit an income tax, it had the inherent power to do so. The position emphasized provoked the appellant to attack the soundness of the O'Connell decision.

An examination of the case will not bear out this interpretation. This court, in looking to the legislative intent, acknowledged the rule that they were not bound by what was expressed in the act, O'Connell v. State Board of Equalization, supra at 95 Mont. 110, 25 Pac. (2d) 118, nor what the legislature intended the act to be. The court also recognized that they had *inherent* power to tax *only* insofar *as not restricted by constitutional mandate.* 95 Mont. at pages 110, 111, 25 Pac. (2d) at page 118.

While appellant gives a lengthy and scholarly review of legislative power versus constitutional inhibition to high light the reasoning he contends is supported by the O'Connell case (including the fountainhead of constitutional law, Marbury v. Madison, 1 Cranch 137, 2 L. Ed. 60), it is of little value in this case because the erroneous reasoning of the court in the O'Connell case does not, under a cursory examination, come to light.

In the oft quoted case of Hilger v. Moore, 56 Mont. 146, 163,

182 Pac. 477, 479 (quoted at length in appellant's brief), we find the following language: *"The legislative department of this state possesses all the powers of lawmaking which inhere in any independent sovereignty, except only insofar as those powers are curtailed by the Constitution of the State, or the supreme law of the land.* In re Pomeroy, 51 Mont. 119, 151 Pac. 333. To determine, therefore, whether a statute is valid, it is not necessary to seek the source of the power to enact it. The authority is inherent if the subject-matter is one with reference to which any legislation may be enacted, and the burden of showing that the authority has been withdrawn from the lawmakers is upon the party who questions the validity of the act. As was said by this court: *'The authority of the Legislature, otherwise plenary, will not be held to be circumscribed by mere implication.* He who seeks to limit the power of the lawmakers must be able to point out the particular provision of the Constitution which contains the limitation expressed in no uncertain terms.' State ex rel. Evans v. Stewart, 53 Mont. 18, 161 Pac. 309.

*"Taxation for the purpose of raising public revenue is a subject peculiarly and inherently of legislative cognizance.* (1 Cooley on Taxation, 3 Id., p. 7), and our Legislature was therefore within its authority in enacting House Bill No. 30, unless the authority to do so is denied to it by the state Constitution or by the Constitution of the United States." Emphasis added.

The O'Connell case did not abrogate the principles of Hilger v. Moore, as appellant contends, but it specifically invoked the same rule.

This court has also frequently held that in construing legislation we may look to legislative intent to interpret the provisions of a statute. State ex rel. DuFresne v. Leslie, 100 Mont. 449, 50 Pac. (2d) 959, 101 A.L.R. 1329; State ex rel. Judith Basin County v. Poland, 61 Mont. 600, 203 Pac. 352; Wells Fargo & Co. v. Harrington, 54 Mont. 235, 169 Pac. 463; McClintock v. City of Great Falls, 53 Mont. 221, 163 Pac. 99.

*There are no new pronouncements as to legislative power in the O'Connell case,* nor did we say the Legislature is the "ar-

biter" of its own power, *rather* we adhered to time tested rules of construction in arriving at the correct result. We find no fault with the language used in O'Connell v. State Board of Equalization, supra.

*Article XII, Section 1a, Const. of Montana.* We come to a discussion of appellant's first argument attacking the validity of Chapter 181. We enter this discussion with the aid of established rules of construction and rules governing Constitutional law: *First,* we are fully cognizant of the rule that our Constitution is a limitation rather than a grant of power. (Hilger v. Moore, supra; McClintock v. City of Great Falls, supra; Great Northern Utilities Co. v. Public Service Commission, 88 Mont. 180, 293 Pac. 294; State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 Pac. (2d) 747); *Second,* every doubt must be resolved in favor of the validity of the legislative act (State ex rel DuFresne v. Leslie, supra; Hale v. County Treasurer of Mineral County, 82 Mont. 98, 265 Pac. 6; O'Connell v. State Board of Equalization, supra); *Third,* that legislative construction of a statute, while not binding on the court may be given consideration (see authority cited, supra); *Fourth,* with reference to the subjects upon which it assumes to speak the Constitution is conclusive upon the Legislature (State ex rel. DuFresne v. Leslie, supra; State ex rel Pierce v. Gowdy, 62 Mont. 119, 203 Pac. 1115); *Fifth,* that our government is divided into three separate and distinct branches, and that one branch may not usurp the powers of another branch (State ex rel. DuFresne v. Leslie, supra; section 1, Acticle IX, Constitution of Montana; State ex rel. Hillis v. Sullivan, 48 Mont. 320, 137 Pac. 392); *Sixth,* the office of interpreting legislative and constitutional provisions lies exclusively in the courts (section 3, Article VIII, Constitution of Montana; State ex rel. DuFresne v. Leslie, supra); and *Seventh,* the provisions of the Constitution are mandatory and prohibitory, unless by express words they are declared otherwise (section 29, Article III, Constitution of Montana). As a corollary of the aforementioned rules we may say that authority to enact Chapter 181 must be expressly denied by section 1a,

Article XII, and the burden of proving that denial is upon the appellant before this court will declare the law invalid.

Bearing in mind the doctrines hereinbefore set forth we will consider appellant's first contention that Montana's ''income tax law'' is invalid because it does not operate *simultaneously* upon the incomes of *persons, firms* and *corporation* and that it does not replace property taxes, within the alleged constitutional mandate that the legislative assembly ''may levy and collect taxes upon incomes of persons, firms and corporations for the purpose of replacing property taxes.'' To support his argument appellant contends first, that to construe section 1a, Article XII, as a grant of power to the legislative assembly, would be to hold the act of the people amending the Constitution, as a mere idle act.

Does this reasoning necessarily follow? One could as easily construe many of the provisions of section 1a, Article XII, as mandatory and prohibitory without reaching the result sought after by appellant. *Thus, by confining the imposition of the tax to persons, firms and corporations, the people could have easily intended to limit the tax to the delineated groups without necessarily 'meaning the tax should be imposed simultaneously.* Would this be an idle act? Would this be merely a grant of power?

The same argument may be made with reference to the purpose for which the tax is levied. Thus, the legislation enacted may have for its purpose the replacement of property taxes, but does this impose an affirmative duty (beyond a reasonable doubt) to replace property taxes entirely? We do not believe that is a mandatory conclusion. Had the people meant that the Legislature should replace property taxes completely on the advent of an income tax, they would have stated their injunction in the form of ''must'' or ''shall'' or ''no'' as other constitutional proscriptions are worded.

The second argument made is that our Constitution is not a grant of power but a limitation upon the legislative power. Citing Hilger v. Moore, supra; State ex rel. Sam Toi v. French,

17 Mont. 54, 41 Pac. 1078, 30 L.R.A. 415; Northern Pacific R. Co. v. Mjelde, 48 Mont. 287, 137 Pac. 386, and many others. However, in conjunction with this rule we must consider section 29, Article III, Montana Constitution, which states that the provisions of our Constitution are *"mandatory and prohibitory, unless* by *express* words they are *declared to be otherwise."* Emphasis supplied. We have words contained in section 1a, Article XII, which take the provision without the prohibitory rule and place it within the exception, e.g., the legislative assembly "may."

Counsel contends thirdly, that the "unless" clause of section 29 of Article III, has no operation in the field of taxation, citing Northwestern Mutual Life Ins. Co. v. Lewis and Clarke County, 28 Mont. 484, 72 Pac. 982, 98 Am. St. Rep. 572, and Cruse v. Fischl, 55 Mont. 258, 175 Pac. 878. However, neither of these cases stands for the proposition cited. Cruse v. Fischl, supra, stands for the proposition that section 2 of Article XII, is not a grant but a limitation of power. In essence the holding of the Cruse case merely applies the doctrine *Inclusio unius est exclusio alterius* to the constitutional provision considered in that case, stating that the exemptions contained in that section are confined to those expressly mentioned. The Northwestern case, supra, could not possibly stand for the proposition for which it is cited.

Moreover this court has expressly negatived the proposition propounded by appellant in State v. Driscoll, 101 Mont. 348, 54 Pac. (2d) 571. In that case defendant was charged with a violation of the liquor control act. By way of defense he contended that the act violated the Montana Constitution in that it created an excise tax which was not specifically provided for in section 1, Article XII, which reads:

"The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for

in this article. The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state.''

In that case defendant contended that section 1, by providing for a tax on property and a license tax, excluded any other form of taxation. Much of defendant's argument depended solely on his contention that section 29, Article III, of our Constitution made section 1, Article XII, prohibitory and mandatory. At page 358 of 101 Mont. at page 575 of 54 Pac. (2d), the court, speaking through Mr. Justice Anderson said:

''This court has heretofore by its decisions declined to accept this construction. Gelsthorpe v. Furnell, 20 Mont. 299, 51 Pac. 267, 39 L.R.A. 170; O'Connell v. State Board of Equalization, 95 Mont. 91, 25 Pac. (2d) 114; Mills v. State Board of Equalization, 97 Mont. 13, 33 Pac. (2d) 563. However, the results in those cases apparently have not convinced counsel, and we are again confronted with a similar contention and now propose, if possible, to settle the same contention so that it will not again recur.

''This court in construing certain provisions of the Constitution in certain instances applied the rule of '*Inclusio unius est exclusio alterius.*' In the case of State ex rel. City of Helena v. Helena Waterworks Co., 43 Mont. 169, 115 Pac. 200, the court was considering the extent of its powers to assume original jurisdiction. Attention was directed to the fact that section 2, of article VIII of the Constitution provided that this court, except as otherwise provided in the Constitution, should have appellate jurisdiction only, and that in section 3 of the same article certain proceedings are enumerated in which original jurisdiction was vested in this court. The court held that in view of the provisions of section 29 of article 3, construed with sections 2 and 3 of Article 8, this court is limited in its original jurisdiction to the proceedings specifically mentioned in section 3.''

The court goes on to discuss two more cases applying the

doctrine of *Inclusio unius est exclusio alterius* and then states at page 360 of 101 Mont., at page 576 of 54 Pac. (2d):

"It will be noted that in each of the three cases cited, supra, wherein this court has applied the rule of *'Inclusio unius est exclusio alterius,'* some express provision of the Constitution was violated by the legislative enactment. In fact, this court in the case of Evers v. Hudson, supra, [36 Mont. 135, 92 Pac. 462] said: 'Section 1, art. II, is not a limitation upon the legislative power, but is a solemn mandate to the Legislature.' It was not a case in either instance where by the mere mention of a subject in the Constitution the court held that all others of a similar class were excluded. The maxim being only a rule of interpretation and not a constitutional command, we now hold, as we have held in the past, that the two methods of taxation mentioned or provided for in section 1 of Article 12, are not exclusive, and the Legislature has the power to adopt other methods of taxation which are not prohibited by some other section of the Constitution."

It would appear that State v. Driscoll, supra, is ample authority for the proposition that the provisions of section 1a, Article XII, may be construed as merely permissive without violating the provisions of section 29 of Article III.

California has also arrived at a similar conclusion in construing provisions of its Constitution, although they have a Constitutional enactment *identical* to our own section 29, Article III. See West's Ann. California Constitution, Article I, sec. 22.

In Dean v. Kuchel, 37 Cal. (2d) 97, 230 Pac. (2d) 811, the California Supreme Court, *en banc,* considered the following case:

In 1947 the California Legislature had passed the "Wildlife Conservation Act of 1947." West's Ann. Fish and Game Code, sec. 1300 et seq. The act provided for the creation of a wildlife conservation board consisting of the President of the Fish and Game Commission, an employee or executive officer of the commission chosen by the commission, and the Director of Finance. Pursuant to the statute the membership of the Board was filled

and they employed Seth Gordon to make a survey of conditions in California. Respondent, State Comptroller, refused to draw warrants for the payment of the salary of Gordon and other employees on the ground that the act was unconstitutional. The constitutional provision invoked (West's Ann. Cal. Const. Art. IV, sec. 25½) states: "The legislature *may* provide for the division of the State into fish and game districts and may enact such laws for the protection of fish and game in such districts or parts thereof as it may deem appropriate.

"There shall be a Fish and Game Commission of five members appointed by the Governor, subject to confirmation by the Senate, with a term of office of six years * * * The Legislature *may delegate* to the commission such powers relating to the protection, propagation and preservation of fish and game as the Legislature sees fit." Emphasis added.

It was asserted that by reason of the above constitutional provision the Legislature had no authority to delegate to any one except the commission any powers relating to the protection, propagation and preservation of fish and game; that under the rule of construction, *expressio unius est exclusio alterius,* that result must be reached; and that, therefore, the Conservation Act was invalid because it delegated such powers to the conservation board.

In holding that the article in question did not prohibit the creation of the Wildlife Conservation Board, the court, at page 101 of 37 Cal. (2d), at page 813 of 230 Pac. (2d), said:

"Here there are factors which not only *create a doubt* that the Legislature was to be restricted to acting through the Fish and Game Commission in legislating in the fish and game field, but there are indications that it was not to be so limited. The wording of section 25½ points in that direction. It begins with the declaration that the *Legislature* may enact such laws for the protection of fish and game 'as it may deem appropriate.' The commission is created and to it the Legislature *may* delegate such powers relating to fish and game as it sees fit. *The word 'may' is at least reasonably susceptible of a permissive meaning*

*rather than mandatory or prohibitory, and it has been held that when such word is used it will not create a restriction on the legislative power even though the Constitution Cal. Const., art. I, sec. 22 also provides: 'The* provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.' See Fresno National Bank v. Superior Court, 83 Cal. 491, 24 Pac. 157; People v. Nye, 9 Cal. App. 148, 98 Pac. 241; Mundell v. Lyons, 182 Cal. 289, 187 Pac. 950; but see In re Cencinino, 31 Cal. App. 238, 160 Pac. 167. *That it may delegate such powers as it may see fit indicates that it may fail to delegate any powers. It is true that the provision may impliedly mean that it may or may not, at its discretion, delegate such powers, but if it does, they must be conferred on the commission. But this is not necessarily the meaning or a necessarily implied negative; nor does it eliminate any doubt."* Emphasis supplied.

You might well paraphrase the emphasized portion of the California decision and say that under section 1a, Article XII, the Legislative Assembly may or may not enact an income tax, but that if it does it must impose it upon the incomes of persons, firms and corporations, simultaneously and it must replace property taxes completely. "But this is not necessarily the meaning or a necessarily implied negative; nor does it eliminate any doubt."

At pages 103 and 105 of 37 Cal. (2d) at page 814 of 230 Pac. (2d) of the Dean case we find further language which is most apt in construing section 1a of Article XII:

"* * * The main thought was that it [the legislature] was empowered to delegate authority to the commission. * * *

"If the people, by the amendment here involved, desired to repose in the Commission created therein the exclusive power to control the fish and game resources of the state, this objective could have been achieved by employing language similar to that used in the provision for the control of the liquor industry in this state. See Cal. Const., art. XX, sec. 22."

Next, appellant argues that we must construe the amendment

in the light of the conditions as they existed at the time of its adoption. Rankin v. Love, 125 Mont. 184, 187, 232 Pac. (2d) 998; State ex rel. Bottomly v. District Court, 73 Mont. 541, 547, 237 Pac. 525. With this contention we agree. In support of his interpretation of the constitutional amendment, appellant cites the title the amendment had when it was submitted to the people in 1934. The act was entitled "Property Tax Relief Amendment." Appellant contends that this title, together with the facts existing at the time of the adoption of the amendment, conclusively shows that section 1a, Article XII, was intended to be a complete replacement of property taxes. The facts, which he alleges support this interpretation, were the extreme economic conditions existing in 1934, e. g., the country in the depth of a depression, farm lands and property being lost to the county for failure to pay taxes, and the number of delinquent property taxes in 1933.

However, we do not feel that the mere fact the title to the amendment cantained "relief" from property taxes can be given the sole connotation of a complete relief of an existing burden. Morphine relieves pain without eliminating it entirely. One man put upon a single task would get relief if another man were assigned to aid him, but such additional help would not relieve him of all the burden of the job but would constitute only partial "relief." Webster's New International Dictionary defines "relief" as a lessening of a burden, "succor," "comfort" and "ease." None of these words connote a complete supplanting, nor did the use of the word in the title of the amendment as presented to the people demand such an interpretation.

In addition to the economic facts cited to us by appellant, we must also consider the following observation made by Mr. Justice Stewart in O'Connell v. State Board of Equalization, supra, 95 Mont. at page 104, 25 Pac. (2d) at page 116:

"The Governor in his message to the Twenty-third Legislative Assembly called attention to the taxation situation in the state, and declared that the income tax proposition had passed the experimental stage, and recommended that a sound and care-

fully drawn income tax law be enacted. In the course of his discussion of the matter he said: 'The supreme court of our sister state, Idaho, has held in a recent case that it was within the power of the legislature to enact an income tax law without submitting the question to a vote of the people, under a Constitution very similar to our own. If, however, in your opinion a Constitutional amendment is required in this case, it should be submitted to the present legislative assembly.'

"In conformity with the Governor's recommendation, chapter 181, now under consideration, was enacted. In further conformity with his recommendation, the Legislature provided for the submission of a constitutional amendment under the terms of Chapter 83 of the Laws 1933. The proposed amendment, by the provisions of the act of submission, will be voted upon by the people at the general election to be held in November, 1934. If adopted, the new amendment will add to section 1 of article 12 of our Constitution the following provision: 'The Legislative Assembly may levy and collect taxes upon incomes of persons, firms and corporations for the purpose of replacing property taxes. These income taxes may be graduated and progressive and shall be distributed to the public schools and to the state government'."

From the quoted portion of the O'Connell case we find that at the very time when the Legislature adopted Chapter 181, Laws of 1933, they also enacted by Chapter 83, Laws of 1933, the amendment to be submitted to the people. If the purpose of the amendment had been to replace property taxes completely or had been conditioned upon its imposition on persons, firms and corporations, then conceivably the Legislature would have framed Chapter 181 along those lines, but it did not.

In addition we must consider the following facts: (1) Chapter 181, Laws of 1933, became effective on March 16, 1933; (2) On July 19, 1933, the supreme court decided the O'Connell case, supra, sustaining the validity of the act; (3) On April 15, 1934, 10,222 persons filed their first Montana income tax returns and paid income tax aggregating $153,164.60; and (4)

Thereafter, on November 6, 1934, the people voted in favor of the constitutional amendment and thereby adopted it.

It is only reasonable to assume that the people, in adopting ▮▮ the amendment to our Constitution, adopted it in the light of the existing income tax law and the construction placed upon that law by this court.

Furthermore, the people were fully cognizant of the circumstances under which Chapter 181, had been declared valid in the O'Connell and Mills cases. Both were three-two decisions; the validity of the legislation was proclaimed by a divided court; the amendment to Article XII sounded the death knell of any opposition to the law as it then existed.

The voting public is fully aware that minds and personages ▮▮ on this court change. A source of revenue, income, could be jeopardized by a change of opinion in the members of this court. Efficient administration of state government demands a steady flow of revenue, the life blood of state government, in order to carry out its functions. By enacting section 1a the doubt of whether the Legislature had power to enact an income tax law was forever put to rest. Montana citizens impliedly approved the act of our Legislature as it then existed. They approved the opinion of the majority of this court in the O'Connell and Mills cases.

For the foregoing reasons, we are of the opinion appellant has failed to prove beyond a reasonable doubt that section 1a, Article XII, conditioned income tax legislation upon the imposition of the tax on persons, firms and corporations simultaneously, or upon the complete replacement of property taxes.

The second argument contended for by appellant, to review ▮▮ the O'Connell and Mills cases with respect to their holdings on the equal protection of the laws and reject their holdings, has all been argued before in both cases. Appellant presents no new grounds for reviewing the holdings in those cases; he presents no arguments not made before and rejected. For that reason, we fail to see what value a further discussion of that argument would have.

Having examined the reasoning in the O'Connell and Mills cases, and having failed to perceive any fundamental weakness in those opinions, we must reject appellant's argument on this point.

The judgment and decree of the district court is affirmed.

MR. JUSTICE CASTLES and THE HONORABLE JOHN B. McCLERNAN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR dissents.

MR. JUSTICE ANGSTMAN, dissenting in part and concurring in part:

To the extent that the majority opinion herein is rested on the opinions of this court in O'Connell v. State Board of Equalization, 95 Mont. 91, 25 Pac. (2d) 114, and Mills v. State Board of Equalization, 97 Mont. 13, 33 Pac. (2d) 563, in both of which I dissented, I concur solely on the ground of stare decisis.

I disagree with the affirmance of the judgment so far as it imposes, as a penalty, the doubling of the tax. The power of the legislature to impose, as a penalty, the doubling of the tax obligation has been upheld by this court. State ex rel. Hardy v. State Board of Equalization, 133 Mont. 43, 319 Pac. (2d) 1061, but it will be noted that I likewise disagreed with the majority opinion on that point and still believe the majority opinion in that case is erroneous. Ordinarily I would now yield to the majority opinion on that point also on the ground of stare decisis had the opinion been one of long standing. The opinion was rendered on January 8, 1958, and in fact the statute had been changed prior to the decision and the penalty was reduced to 25 percent.

The majority opinion in the Hardy case has not been acquiesced in by the general public over a period of years as is true in the cases of O'Connell and Mills, supra, and hence the members of this court are free to question its soundness. State ex rel. Morgan v. State Board of Examiners, 131 Mont. 188, 309 Pac. (2d) 336.

I think for the reasons stated in my dissenting opinion in the Hardy case, supra, the tax should not be doubled. To do so is to impose excessive and unreasonable penalties contrary to the Constitution. I say this even though Commissioner Waddill disagrees with me. Commonwealth v. St. Matthews Gas & Electric Shop, Ky. 1952, 252 S. W. (2d) 673.

Furthermore the penalty of 100 percent should not be imposed here for another reason. By Chapter 163, Laws of 1955, the law was amended reducing the penalty to 25 percent. By necessary construction then, the law imposing a 100 percent penalty was repealed.

Chapter 163 contains no saving clause. While there is some conflict, the clear weight of authority supports the view that where a statute imposing a penalty has been repealed all rights to penalties which have theretofore accrued are gone.

The rule is stated in 85 C.J.S. Taxation, sec. 1022 c, p. 579, as follows:

"On repeal of a statute imposing penalties on tax delinquents, the penalties cease to accrue; and, while the contrary doctrine has been maintained, the weight of authority is to the effect that all rights to penalties which have theretofore accrued are gone, in the absence of a constitutional provision to the contrary, unless the right be saved by the repealing act; and this is true both where suits have been commenced or claims made for the penalty before the repealing act was passed, and where suit was brought to enforce the penalty after the passage of the repealing act. Repeal after assessment and accrual of penalty has been held to debar revival of the penalty, although the tax itself may be revived."